**Eric CRUZ, Plaintiff,**

v.

**Sergeant ROOT, Victor Ducot, Correction Officer and Kerry Hurter, Correction Officer, Defendants.**

No. 90–CV–1242L.

United States District Court, W.D. New York.

July 9, 1996.

Michael Wolford, Michael R. Wolford & Associates, Rochester, NY, Judy A. Toyer, Rochester, NY, for plaintiff.

Charles D. Steinman, Emil J. Bove, Office of New York State Attorney General, Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

Plaintiff Eric Cruz ("Cruz") contends that on August 4, 1990, while he was an inmate at Elmira Correctional Facility, he was beaten by corrections officers in violation of his Eighth Amendment rights. In September 1990, Cruz filed suit against the state in the New York Court of Claims. Shortly thereafter, he commenced this action in federal court pursuant to 42 U.S.C. § 1983. In March 1991, defendants Harold Root, Victor Ducot and Kenneth Hunter answered the complaint.

On August 25, 1992, after his request for the appointment of counsel was denied, Cruz appeared *pro se* at his Court of Claims hearing. The trial lasted one day, and on December 10, 1992, the Court of Claims dismissed Cruz's claim finding that Cruz precipitated the altercation by making threatening gestures with his hands, that he disobeyed the officer's orders to put his hands behind his back, and that the officers did not use excessive force in subduing him.

On August 23, 1993, this Court appointed counsel to represent Cruz in his federal ac-

tion.[1]  Apparently, substantial discovery ensued, most notably, Cruz noticed the depositions of two inmates, and defendants noticed Cruz's deposition.  On May 1, 1996, defendants moved for summary judgment alleging that Cruz is collaterally estopped from relitigating the issues previously determined in the New York Court of Claims action.[2]  Cruz opposes the motion noting defendants' failure to plead collateral estoppel as an affirmative defense in their answers and their failure to explain the more than three year delay (following the Court of Claims decision in December 1992) in bringing the instant motion. More importantly, he contends collateral estoppel should not be applied in this case because he was denied a "full and fair opportunity to litigate" his claim in the state proceeding.  *See Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

As set forth below, because I believe that Cruz was not able adequately to represent himself at his Court of Claims trial and suffered prejudice as a result, the invocation of the doctrine of collateral estoppel is not justified here.

## DISCUSSION

As a preliminary matter, defendants have failed to provide any explanation for their more than three year delay in seeking to amend their answers to add the affirmative defense of collateral estoppel.[3]  This alone provides a sufficient basis to deny the motion.  *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2nd Cir.1990).  But, I need not rely on this procedural basis.  On the merits, a review of the facts presented reveals the application of the doctrine of collateral estoppel is inappropriate here.

■ As a basic principle, "[s]tate court judgments are to be given the same preclusive effect in federal court as they would be given in the courts of the state itself."  *West v. Ruff*, 961 F.2d 1064, 1065 (2d Cir.1992) (citing *Allen v. McCurry*, 449 U.S. at 96, 101 S.Ct. at 415–16).  Thus, if Cruz is barred

from relitigating his claims in a New York state court, he will also be barred here.  *See West, supra*, 961 F.2d at 1065;  *Genova v. Town of Southampton*, 776 F.2d 1560, 1561 (2d Cir.1985).

■ The first requirement under New York law for the invocation of collateral estoppel is that "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action...."  *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969);  *see also Smith v. Russell Sage College*, 54 N.Y.2d 185 (1981) (for collateral estoppel to apply, claim must have emerged from the "same nucleus of facts" as that asserted in prior action).  Here, the parties do not dispute that this first requirement is met.  Both the Court of Claims action and this action arise from the incident that allegedly occurred at the Elmira Correctional Facility on August 4, 1990.  The issues presented in both actions concerning the alleged violation of Cruz's constitutional rights are identical, and were decided in defendants' favor.  The only question is whether the second requirement—that "there must have been a full and fair opportunity to contest the decision now said to be controlling"—has been satisfied.  *See Schwartz*, 24 N.Y.2d at 71, 298 N.Y.S.2d 955, 246 N.E.2d 725.  I am not convinced that Cruz had such an opportunity.

■ There is no simple test for determining whether a party has had a "full and fair opportunity" to litigate the claim or issue sought to be precluded.  *See Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir.1993). Rather, the basic concern is one of fairness. *Id.* (the doctrine of collateral estoppel is "premised on notions of due process and fairness," and the "rigid or mechanical application of the doctrine runs counter to [these] principles ...");  *see also Schwartz*, 24 N.Y.2d at 73, 298 N.Y.S.2d 955, 246 N.E.2d 725 (cautioning against the rigid application of collateral estoppel).

1.  The record indicates that prior to the appointment of counsel in August 1993, this Court denied six other requests by Cruz for the appointment of counsel dating back to February 1991.

2.  Defendants also seek to amend their answers to assert the defense of collateral estoppel.

3.  The defendants' original answers were filed prior to the Court of Claims decision.

In *Schwartz*, the New York Court of Appeals identified a list of factors that should be considered in determining "whether a party has had his day in court." *Id.* at 72, 298 N.Y.S.2d 955, 246 N.E.2d 725. This list includes "such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, **the competence and experience of counsel,** the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." *Id.*, emphasis added. The major issue raised by Cruz is that he did not have a "full and fair" opportunity to litigate his claim in the Court of Claims because his request for appointed counsel was denied and he was forced to prosecute that action *pro se.*[4]

While Cruz's status as a *pro se* litigant is not by itself dispositive (*see Clark v. Department of Correctional Services*, 564 F.Supp. 787, 789 (S.D.N.Y.1983)), it is certainly important to any determination of the fairness of his prior opportunity to be heard. *See West*, 961 F.2d at 1065–66; *Clark*, 564 F.Supp. at 788–89. In *West*, the plaintiff, an inmate at Great Meadows Correctional Facility, filed a *pro se* negligence action against the State of New York in the Court of Claims seeking damages for injuries sustained in a fight in a prison yard. He also filed an action in Federal District Court under 42 U.S.C. § 1983. Trial was held first in the Court of Claims and judgment was entered against the plaintiff. Summary judgment was later entered against the plaintiff in the district court on the grounds of res judicata/collateral estoppel. *West*, 961 F.2d at 1065.

In reversing, the Second Circuit noted that the district court's appointment of counsel in the federal action "reflected the . . . court's assessment that West's claim had colorable substance and that counsel was needed to present the claim in an adequate fashion." *Id.* The court also found that the plaintiff had only one day's notice of his Court of Claims trial, his appointed counsel in the

federal action was never notified of the parallel state action, the Court of Claims judge was not aware of the existence of the appointed counsel, and that the plaintiff was prejudiced in that he was unable to produce an alleged eyewitness due to the lack of discovery and advance notice of the trial. *Id.* at 1066. The court concluded that the totality of the circumstances suggested the lack of a full and fair opportunity to litigate the plaintiff's prior claim, and, therefore, the application of collateral estoppel was inappropriate. *Id.*

Although Cruz does not suggest that he, like the plaintiff in *West*, received inadequate notice of his trial date in the Court of Claims, the facts presented here do raise questions regarding Cruz's competence to proceed *pro se* in his state court proceeding and the prejudice he may have suffered as a result. *See Clark v. Department of Correctional Services*, 564 F.Supp. at 788–89.

In *Clark*, 564 F.Supp. at 788–89, the district court found that the plaintiff was "so ill able to represent himself as to have lacked a full opportunity to present his claims." The court noted that prior to trial, the plaintiff requested assistance from two Legal Aid organizations, and further sought assistance from the Court of Claims, all without result. The district court in *Clark* found the plaintiff "obviously confused and ill-prepared" to handle his state court proceeding. *Id.* at 789. "Thus, while plaintiff did make numerous attempts to present his claims and represent himself effectively, he simply did not have the opportunity to do so which would have been vouchsafed a person—whether lawyer or *pro se* litigant—more cognizant of legal proceedings." *Id.*

In the instant case, the facts raise questions not only as to Cruz's "lack of familiarity with the law," as was the issue in *Clark*, but his general mental competence as well. In the Court of Claims decision, Judge Hanifin writes,

> Claimant's mental state was not explored at length at the trial, but there are clues which suggest why he is unable to under-

---

**4.** It is Cruz's burden, as the party opposing the application of collateral estoppel, to show that he was denied a full and fair opportunity to be

heard. *See Schwartz*, 24 N.Y.2d at 73, 298 N.Y.S.2d 955, 246 N.E.2d 725.

stand why his cell is frequently searched. For example, it is highly unlikely that his food is being tampered with 'to entice confusions.' Although the Court does not believe that claimant's food causes him because of confusion, there is little doubt that he is confused to some degree and, sadly, reacts violently because of that confusion.

Neither Cruz nor defendants address Cruz's mental status. Defendants simply contend that Cruz "is an experienced litigator in light of the two Court of Claims trials held on August 25, 1990 [sic],[5] and the number of disciplinary hearings described in the Court of Claims transcript." (Bove Reply Affidavit, at ¶ 14.) *See also Giano v. Kelly,* 869 F.Supp. 143, 147 (W.D.N.Y.1994) (court distinguished *West* and *Clark,* finding the plaintiff's *pro se* "papers were fully developed and complete"). As the court explained in *Clark,* 564 F.Supp. at 789, "there may well be situations in which it would be inequitable to allow a plaintiff who had proceeded *pro se* to allege that he was prevented from presenting his case. However, the record in this action convinces us that this is not such a case."

A review of the documents submitted by Cruz reveals they are anything but "fully developed and complete." As Judge Hanifin noted, the documents are replete with "misspellings and grammatical errors." More importantly, at times it is difficult to understand just what he is alleging. (*See* Court of Claims Decision at 3, "I was to have my food for two days after every 7 days diet now the CO V. Ducot and Sgt. Root refused to give me my two days of food.") Clearly, Cruz's mental competence goes to the very heart of

any determination whether, in representing himself, he was afforded a full and fair opportunity to litigate his claim. If a party who is merely unfamiliar with the law and legal proceedings can be found to have been denied a full and fair opportunity to be heard, one who is arguably incapable of understanding the law and legal proceedings can hardly be held to have been afforded a fair hearing. *See Clark,* 564 F.Supp. at 788–89.

Further, there is evidence to suggest that Cruz was prejudiced by the lack of appointed counsel. Both of Cruz's claims in the Court of Claims were tried in one day. In the second trial, the one at issue here, the majority of the questions posed by the state on cross-examination were directed at Cruz's disciplinary record while incarcerated, including events which occurred after the August 4, 1990 incident in question. More importantly, each of the officers was permitted to listen to each others' testimony. Any "experienced litigator" would have requested that they be precluded from doing so. Thus, Cruz's ability to explore any apparent inconsistencies in the officers' testimony was prejudiced, if not precluded.[6]

Cruz also contends he was not allowed to present medical evidence[7] or to call witnesses at his Court of Claims trial. Defendants suggest that unlike the plaintiff in *West,* Cruz was not precluded from calling any witnesses, he simply failed to do so. The record is silent as to whether Cruz was in fact precluded from calling witnesses. However, given the questions raised regarding Cruz's mental competence, defendants' contention misses the point. Moreover, it is interesting to note that Cruz's appointed

---

**5.** Cruz had two separate trials disposed of on the same day—August 25, 1992. The record is silent as to what occurred at Cruz's other Court of Claims matter. Cruz had two separate trials disposed of on the same day—August 25, 1992.

**6.** See also the state's direct examination of Officer Mark A. Taylor (Court of Claims hearing transcript at pp. 74–75):

Q. All right. You were here during the testimony of Sergeant Root?
A. Yes, I was.
Q. And Officer Hunter and Officer Ducot?
A. Yes, I was.
Q. Is there anything that you—you observed that they have not testified to?

A. Um, no.
Q. Is there anything that you heard them testify to that you would not consider accurate?
A. No, sir.
    Mr. McCabe: Nothing further.

**7.** Cruz was apparently allowed to present some medical evidence; however, he indicated at the Court of Claims trial that "there are more to these documents in my medical files, but I have sent them to Washington because I was looking for some help, and they didn't send me all of it back." (Court of Claims hearing transcript at p. 32.)

counsel noticed and presumably has taken the depositions of two inmate witnesses in preparation for the federal trial.

In sum, given Cruz's apparent mental confusion and his resulting inability to effectively represent himself, under the principles of fairness enunciated in *Schwartz, West* and *Clark*, it cannot be said that Cruz received a "full and fair" opportunity to litigate his claims in the state court proceeding.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment and to amend their answers is denied.[8]

IT IS SO ORDERED.

---

8. Defendants further contend they are entitled to qualified immunity as a matter of law. To the extent they rely on the Court of Claims findings of fact, for the reasons set forth above, their contention lacks merit. To the extent that they argue their actions were "objectively reasonable" as a matter of law, thus entitling them to qualified immunity, their contention necessarily raises questions of fact that preclude summary judgment.