(No. 90418.—

RONALD NOWAK, Appellee, v. ST. RITA HIGH SCHOOL, Appellant.

*Opinion filed September 20, 2001.*

Riordan, Fulkerson, Smith & Coleman, of Chicago (Alan L. Fulkerson and Michael J. Coleman, of counsel), for appellant.

Kelley, Kelley & Kelley, of Schaumburg (Mark L. LeFevour, William F. Kelley and Martin C. Kelley, of counsel), for appellee.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Ronald Nowak,[1] filed this action against the defendant, St. Rita High School, seeking recovery on the bases of promissory estoppel and breach of contract for defendant's alleged violation of established salary policies and for improper termination of plaintiff's employment contract as a tenured teacher. Plaintiff's complaint, as amended, consisted of four counts. Counts I and IV alleged that defendant had breached the salary and tenure provisions of plaintiff's written employment contract. Counts II and III, sounding in contract and promissory estoppel, respectively, asserted claims for breach of an alleged policy whereby defendant paid a portion of the salary of a teacher on medical leave, i.e., the difference between the teacher's full salary and that paid to a substitute. The circuit court of Cook County dismissed counts I and IV with prejudice and entered summary judgment for defendant on counts II and III. Plaintiff appealed.

The appellate court affirmed the entry of summary

---

[1] This court allowed a motion to substitute Tony Nowak as special administrator of the estate of Ronald Nowak upon notice of his death after the cause was taken under advisement.

judgment on counts II and III, as well as the dismissal of count I with prejudice. However, the court reversed the dismissal of count IV and remanded the cause for further proceedings thereon. No. 1—99—2591 (order under Supreme Court Rule 23). We allowed the defendant's petition for leave to appeal (177 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court. We set forth hereafter the facts pertinent to our disposition.

Plaintiff began teaching full time at St. Rita in 1965. Beginning in December 1990, plaintiff experienced severe health problems. Plaintiff was absent from St. Rita between December 29, 1990, and approximately April 1, 1991, because he was hospitalized for quadruple coronary bypass surgery and a subsequent infection. Plaintiff missed the final eight days of the academic year in May 1991 because of an infection in his right leg. As a result of these hospitalizations, plaintiff missed 65½ regular school days and three examination days at the end of the school year.

On September 9, 1992, five days after the start of the 1992-93 academic year, plaintiff was taken to the hospital after he experienced back problems that prevented him from standing erect. He subsequently underwent surgery to stabilize his spine. On September 29, 1992, plaintiff was transferred to a rehabilitation center until his discharge on December 3, 1992.

During plaintiff's absence, defendant hired a substitute teacher, maintained plaintiff's medical insurance, and continued to pay him a partial salary, representing the difference between plaintiff's salary and the salary paid to the substitute teacher.

In March of 1993, plaintiff attempted to return to work at St. Rita. Plaintiff and his therapists met with Joseph Bamberger, assistant principal at St. Rita, to discuss the accommodations necessary to facilitate plaintiff's return to the classroom. As a result of that

meeting, defendant made the following accommodations: (1) plaintiff was assigned a classroom in close proximity to the faculty lounge and rest rooms; (2) plaintiff was assigned a room with elevated seating so he could observe and better control his class while he remained seated; (3) plaintiff was assigned a parking space in close proximity to his classroom; and (4) plaintiff was allowed to teach half days, and defendant agreed to provide a substitute teacher for the classes he did not teach. For four days, between March 15 and March 18, 1993, plaintiff was able to fulfill his responsibility of teaching half days. However, on March 24, 1993, plaintiff experienced severe swelling in his joints, including ankles, knees, elbows and hands. This swelling rendered plaintiff unable to stand, walk, or grasp.

On March 24, 1993, plaintiff was readmitted to the hospital, where he remained until June 21, 1993. During this hospital stay, plaintiff underwent operations on both of his hands and had an above-the-knee amputation of his left leg. While hospitalized, an application was submitted by or on behalf of plaintiff to the Social Security Administration (SSA) for social security disability benefits, and plaintiff thereafter spoke with an SSA representative to discuss the application for benefits. Subsequently, plaintiff was transferred to another treatment facility for additional physical therapy. On July 28, 1993, plaintiff was moved to a nursing home until his discharge to his home on October 1, 1993, where he received an additional five months of in-home therapy. In November of 1993, the SSA determined that plaintiff was disabled and he began receiving disability benefits retroactive to September 15, 1992, the date of his initial disability. Between March of 1993 and the late spring or early summer of 1994, Bamberger met with plaintiff on several occasions, attempting to ascertain when plaintiff would be able to resume his teaching duties. At the begin-

ning of the 1993-94 academic year, defendant discontinued payment of plaintiff's salary differential. At that time, plaintiff did not advise defendant that he intended to return to the classroom, nor did he formally request a leave of absence.

On October 7, 1994, defendant informed plaintiff that his employment was terminated due to his extended illness and ongoing inability to fulfill his teaching responsibilities. Defendant continued to provide plaintiff with medical benefits until March 1995.

Following his termination, plaintiff filed a timely charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC issued a right-to-sue letter on June 26, 1995. Plaintiff filed a federal action on August 9, 1995. In that action, plaintiff sought recovery for violation of the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 *et seq.* (1994 & Supp. 1997)) and also asserted a supplemental, or pendent, state claim for breach of his employment contract. As the district court determined, in order for plaintiff to prevail on his ADA claim, he was required to prove that he was a "qualified individual with a disability," *i.e.*, at the time of St. Rita's decision to discharge him, he possessed the necessary skills to perform his job and he was willing and able to demonstrate those skills by coming to work on a regular basis. The district court found plaintiff's "failure to appear at work for nearly eighteen months before his discharge and his receipt of Social Security disability payments *** indicate conclusively *** that he is not a 'qualified individual' under the ADA." Consequently, the district court granted summary judgment in favor of defendant as to the ADA claim and, exercising its statutory discretion (see 28 U.S.C. § 1367(c)(3) (1994)), "decline[d] to assert jurisdiction" over the pendent state claim, dismissing it "for lack of jurisdiction." Plaintiff appealed.

The Seventh Circuit Court of Appeals affirmed the district court's grant of summary judgment on the ADA claim, the "sole issue" before the court. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998). Noting the district court's ruling that plaintiff had "failed to provide any evidence, medical or otherwise, that on October 7, 1994, he was able to perform the essential functions of his position as a teacher at St. Rita" (*Nowak*, 142 F.3d at 1003), the court of appeals reviewed the facts and reached the same conclusion:

"The undisputed facts show that Nowak was unable to perform an essential function—regular attendance—required of a teacher at St. Rita. Prior to his termination, Nowak was absent from his teaching position for more than eighteen months. During his absence from St. Rita, Nowak received SSI Benefits for more than sixteen months and apparently still receives them today. In order to receive this benefit, Nowak certified to the SSA that he was unable to perform the duties of his job. Nowak continues to receive SSI Benefits and has not notified the SSA that he is able to return to work. At no time, during the more than eighteen months Nowak was absent from his teaching position, did he contact St. Rita administrators to inform them that it was his intention to return to his teaching duties." *Nowak*, 142 F.3d at 1003-04.

Answering plaintiff's averment that he told Bamberger on the day of his termination he was ready to return to work, and that his medical records substantiated his assertion that he could function as a teacher, the court responded that plaintiff "must prove that *at the time of St. Rita's decision to discharge him,* he possessed the necessary skills to perform his job and that he was willing and able to demonstrate these skills by coming to work on a regular basis. *** He fails *** to point to anything in [the] medical records indicating he was capable or willing to come to work on a regular basis *prior to the termination decision.*" (Emphases added.) *Nowak*, 142 F.3d at 1003. The court of appeals concluded

its analysis by citing cases in support of its disposition, holding, respectively, that the ADA does not protect an employee from being fired because of illness (*Christian v. St. Anthony Medical Center, Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997)) and that an employee who cannot attend work is not a "qualified individual with a disability" under the ADA (*Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996). *Nowak*, 142 F.3d at 1004.

As stated hereinabove, after his state claim was dismissed in the federal district court for "lack of jurisdiction," plaintiff filed the instant action in the circuit court of Cook County. The circuit court ultimately dismissed counts I and IV of plaintiff's amended complaint with prejudice pursuant to defendant's section 2—619 motion (735 ILCS 5/2—619 (West 1998)) and entered summary judgment for defendant on counts II and III.

In the ensuing appeal, the appellate court affirmed the judgment of the circuit court, except with respect to count IV of plaintiff's complaint. As to that count, the appellate court reversed the circuit court's dismissal and remanded for further proceedings. Count IV alleged that defendant had breached the tenure provisions of the parties' written employment contract by failing to comply with the procedures mandated for removal of a teacher from tenure.

The tenure provisions of the contract provide that a teacher cannot be removed from tenure until he has received written notice and has been afforded three formal conferences. Conferences must be at least one month apart, and the teacher is to be given written notice for each conference. If an initial conference fails to result in "sufficient improvement," or "if matters need further clarification," second and third conferences are required before the matter can be submitted to a tenure

board for final disposition. At the final hearing before the board, the teacher must be afforded certain procedural safeguards, such as the right "to present his case, to bring an advisor with him, and to present witnesses on his behalf." The teacher also has the right to cross-examine witnesses against him. At the conclusion of the hearing, the board may consider removal of a teacher "if he does not significantly aid the school in furthering its goals." A decision must be rendered within one month, and a teacher cannot be removed from tenure unless seven of the nine board members agree that removal is the appropriate disposition.

The appellate court determined the language of the tenure provisions in the parties' contract was "a clear and unambiguous expression of the parties' intent" and "obligated defendant to comply with the notice and hearing provisions contained therein." The court held plaintiff had "affirmatively alleged that defendant had failed to give [him] the written notices and hearings which are mandated by the tenure policy" and, for purposes of the defendant's motion to dismiss, those allegations must be accepted as true. While the appellate court acknowledged informal contacts between the parties during plaintiff's prolonged illness, the court found those contacts "manifestly insufficient to constitute compliance" with the contract's tenure provisions. Thus, the pleadings before the trial court established a genuine issue of material fact which precluded dismissal of count IV. The appellate court rejected defendant's contention that the doctrine of *res judicata* barred plaintiff from raising his tenure claim in state court, finding that plaintiff *had* asserted *his* state claim in the federal action, unlike the plaintiff in *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290 (1998), upon which defendant relied, and that the dismissal of plaintiff's breach of contract claim in federal court "solely upon a decision

not to exercise supplemental jurisdiction" was not "a determination on the merits" for purposes of *res judicata*.

We review *de novo* the granting of a section 2—619 motion to dismiss. *Parks v. Kownacki*, 193 Ill. 2d 164, 175 (2000). Where, as here, a cause of action is dismissed pursuant to a section 2—619 motion, the questions on appeal are whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law. *Wright v. City of Danville,* 174 Ill. 2d 391, 398-99 (1996).

Defendant now argues that the doctrines of *res judicata* and collateral estoppel bar assertion of plaintiff's contract tenure claim. Defendant also contends that plaintiff's conduct amounted to abandonment of his tenure rights under the contract. We find no merit in these contentions.

A prior judgment may have preclusive effects in a subsequent action under both *res judicata* and collateral estoppel. The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. When *res judicata* is established as a bar against the prosecution of a second action between the same parties upon the same claim or demand it is conclusive not only as to every matter which *was* offered to sustain or defeat the claim or demand, but as to any other matter which *might* have been offered for that purpose. *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 251-52 (1984).

The doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been

adjudicated against that party in the former suit by a court of competent jurisdiction. The adjudication of the fact or question in the first cause will, if properly presented, be conclusive of the same question in the later suit, but the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which *might* have been litigated and determined. *Young Men's Christian Ass'n*, 101 Ill. 2d at 252.

For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). Under Illinois law, the dismissal of a complaint for failure to state a claim is an adjudication on the merits, while the dismissal of a complaint for lack of subject matter jurisdiction is not considered a decision on the merits of the complaint. *River Park*, 184 Ill. 2d at 303. *Res judicata* will not be applied where it would be fundamentally unfair to do so. *Altair Corp. v. Grand Premier Trust & Investment, Inc.*, 318 Ill. App. 3d 57, 62-63 (2000); *Weisman v. Schiller, Ducanto & Fleck*, 314 Ill. App. 3d 577, 581 (2000).

The minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is *identical* with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001); *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000); *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997). Application of the

doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment. *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 467 (1996).

Collateral estoppel is an equitable doctrine. *Du Page Forklift Service*, 195 Ill. 2d at 77. Even where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped. *Savickas*, 193 Ill. 2d at 388; *Talarico*, 177 Ill. 2d at 191-92. In deciding whether the doctrine of collateral estoppel is applicable in a particular situation, a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. In determining whether a party has had a full and fair opportunity to litigate an issue in a prior action, those elements which comprise the practical realities of litigation must be examined. *Talarico*, 177 Ill. 2d at 192.

We address first defendant's contention that *res judicata* bars count IV of plaintiff's amended complaint and defendant's reliance upon our decision in *River Park* in support of that argument.

In *River Park*, plaintiff initially filed a federal civil rights action pursuant to section 1983 (42 U.S.C. § 1983 (1994)) and failed to assert therein claims for abuse of governmental power and breach of contract, claims which plaintiff thereafter sought to raise in state court. We held that the circuit court had properly dismissed the subsequently asserted state claims under the doctrine of *res judicata*. Employing the "transactional" test, we found identity of cause of action and thus determined that the state claims were barred because plaintiff had not asserted them in the federal action. *River Park*, 184 Ill. 2d at 313-14. The transactional test provides that the assertion of different kinds or theories of relief still consti-

tutes a single cause of action for purposes of *res judicata* if a single group of operative facts gives rise to the assertion of relief. *River Park*, 184 Ill. 2d at 307. Because plaintiff was required to assert all of its related claims in the federal action, and failed to do so, and because the dismissal of the federal action constituted an adjudication on the merits for purposes of Supreme Court Rule 273 (134 Ill. 2d R. 273), we found that the doctrine of *res judicata* had been properly applied by the circuit court to bar the subsequent assertion of claims that *should* have been raised in the federal action.

In *this* case, plaintiff asserted his contract tenure claim in the federal action, as required by the transactional test, only to have his claim dismissed by the district court "for lack of jurisdiction" after an adverse decision on his ADA claim. Whether that dismissal was discretionary or otherwise is beside the point; it was a dismissal for lack of jurisdiction. There was no adjudication of the merits on *that* claim despite plaintiff's proper and timely assertion of the claim. With respect to that timely asserted claim, plaintiff did not get his day in court and, therefore, *res judicata* does not apply.

Defendant argues that the claim nonetheless arose from a single transaction and thus an adjudication on plaintiff's ADA claim constitutes an adjudication of both as far as application of the doctrine of *res judicata* is concerned. Such a contention is neither consistent with notions of fairness nor supported by controlling authority.

Although the claims in question may be initially regarded as a single cause of action for application of *res judicata*, subsequent events may alter their status. For example, *res judicata* does not apply to bar an independent claim of part of the same cause of action if the court in the first action expressly reserves the plaintiff's right to maintain the second action or the plaintiff is unable to

obtain relief on his claim because of a restriction of the subject-matter jurisdiction of the court in the first action. *Airtite v. DPR Ltd. Partnership*, 265 Ill. App. 3d 214, 219 (1994); Restatement (Second) of Judgments § 26(1) (1982).

In *River Park*, we found it significant that plaintiff did not raise claims that "could have been" asserted in federal court and that the federal court might have exercised supplemental jurisdiction over those claims. *River Park*, 184 Ill. 2d at 317-18. Had plaintiff in that case asserted all of its claims in the federal action, the worst case scenario for plaintiff would have entailed a dismissal of certain claims by the federal court for lack of federal jurisdiction. Plaintiff could then have properly pursued its claims in state court. Because plaintiff in *River Park* "could have raised" its various claims in the federal court in the first instance, but did not, an adjudication of the claim that *was* raised acted as a bar to the subsequent assertion of claims *not* raised in the federal proceeding. The result in *River Park* is consistent with the purpose of *res judicata, i.e.*, to promote judicial economy by requiring parties to litigate, in one case, all rights arising out of the same set of operative facts. *River Park*, 184 Ill. 2d at 319. Moreover, there is no unfairness to plaintiff: the federal court either addresses the merits of plaintiff's claims or it exercises its discretion and declines jurisdiction over pendent claims, in which case they can be pursued in state court.

The facts of the instant case place it squarely within the exceptions to the application of *res judicata* as set forth in the Restatement (Second) of Judgments § 26(1) (1982), and in *Airtite*, both of which were cited by this court in *River Park*. By declining jurisdiction over the plaintiff's pendent state claim, dismissing it for lack of jurisdiction, the district court in effect reserved plaintiff's right to pursue the matter in state court. The doctrine of

*res judicata* need not be applied in a manner inconsistent with fundamental fairness. *People v. Somerville*, 42 Ill. 2d 1, 4 (1969); *Airtite*, 269 Ill. App. 3d at 219. The doctrine does not apply in this case.

Defendant's argument for the application of collateral estoppel is no more persuasive. Defendant's collateral estoppel argument must fail because the issues are not *identical*, as required for application of that doctrine. See *Talarico*, 177 Ill. 2d at 191 (the issue decided in the prior adjudication must be *identical* to the one presented in the suit in question). We cannot agree with defendant's suggestion that the issues decided by the federal court in its resolution of the ADA matter are the same as those pertinent to plaintiff's contract tenure claim.

Again and again, the court of appeals referred to the relevant time for ADA analysis as "prior to" and "the time of [plaintiff's] termination." *Nowak*, 142 F.3d at 1003-04. The framework and focus of ADA analysis is essentially retrospective. As the court of appeals noted, in order for plaintiff to succeed on his ADA claim, he was required to prove, *inter alia*, "that *on October 7, 1994* [the date of his termination], he possessed the necessary skills to perform his job, and that he was *willing and able* to demonstrate these skills by coming to work on a regular basis." (Emphases added.) *Nowak*, 142 F.3d at 1003. The critical date for purposes of the ADA inquiry was the date of termination. In view of his extended illness and prolonged absence, plaintiff's inability to perform his job on the date of termination meant that the ADA afforded him no protection.

That determination has nothing to do with the independent protection to which plaintiff was entitled by reason of tenure provisions in the parties' contract. The focus of the tenure resolution procedure, to which plaintiff would seem to be entitled by contract, is at the outset prospective and remedial. The clear objectives of

that procedure are, initially, to impress upon an errant teacher the gravity of his situation and to attempt to rectify unacceptable conditions or behavior. The three required conferences serve both as a series of formal warnings *and* a practical means to resolve problems between parties of long-standing association. Only *after* the initial remedial efforts prove unsuccessful is a hearing held to determine the teacher's fate. Even then, removal from tenure requires the consensus of seven members of the tenure board, rather than the edict of one. If we were to accept the defendant's argument, we would in effect be condoning the defendant's disregard of the very tenure apparatus which the parties had established to protect their respective rights and interests. The fact that plaintiff *had* not proven himself able to come to work on a regular basis is not identical to the questions of whether defendant had accorded plaintiff his rights under the parties' contract and whether he *could*, in the months coinciding with the remedial tenure conferences, rectify his attendance problems. A finding that plaintiff was *unable* to perform on October 7, 1994, does not necessarily mean that he could not, after he was afforded his rights under the remedial provisions of the tenure resolution procedure, "significantly aid the school in furthering its goals" in the future. Because the issues are not identical, collateral estoppel does not bar assertion of the claim set forth in count IV of plaintiff's amended complaint.

The language of the parties' tenure policy was clear and unambiguous. It obligated defendant to comply with the formal tenure provisions of the parties' contract regarding notice, remediation, hearing and removal. As the appellate court concluded, the "informal" contacts between the parties were "manifestly insufficient" to constitute compliance with those provisions. Obviously, the formality of the procedure serves a purpose: to

impress upon the teacher the seriousness of his or her situation and thus further the remedial objectives of the procedure's initial stages. Like the appellate court, we conclude that plaintiff properly asserted a claim for breach of the tenure provisions of his employment contract.

Finally, we reject the contention that defendant was justified in ignoring the tenure provisions of the parties' contract because plaintiff's conduct constituted abandonment of his contract rights. In fairly rapid succession, this plaintiff experienced quadruple coronary bypass surgery, a serious infection of his right leg, back surgery, operations on both of his hands, and an above-the-knee amputation of his left leg. His prolonged absence from St. Rita's was clearly related to his medical condition. Defendant knew that from regular contacts with plaintiff. Defendant acknowledged in a letter that plaintiff was on sick leave. We attach little significance to the fact that plaintiff could not provide defendant with a date certain upon which he could return. He did try, albeit unsuccessfully, to return to teaching on more than one occasion. At the time of his termination, he indicated to defendant that he wished to return and he hoped he could do so with more therapy and time. The fact that plaintiff had been unable to do so by the date of his termination is no more conclusive as to his intentions and the issue of abandonment than it was in our discussion of collateral estoppel. We find meritless defendant's suggestion that plaintiff's circumstances are somehow comparable to those of the teachers in cases defendant has cited. If we were to accept defendant's argument, that a teacher "abandons" his contract rights when he experiences an extended illness and can neither project the date of his return nor perform his duties on the date of the school's unilateral decision to terminate him, then tenure rights could be rendered virtually worthless. We find no dispos-

itive evidence or findings in the record to date that would indicate that plaintiff abandoned, *i.e.*, voluntarily relinquished, his tenure rights under the parties' contract.

In conclusion, we find that count IV of plaintiff's amended complaint was improperly dismissed by the circuit court. Genuine issues of material fact exist as to count IV and the claim asserted therein is not precluded as a matter of law. Under the judgment of the appellate court, the cause will be remanded to the circuit court for further proceedings thereon. Since neither plaintiff nor defendant questions the propriety of the appellate court's rulings as to other counts of plaintiff's amended complaint, we need not address the appellate court's disposition thereof. The appellate court's judgment is therefore affirmed.

*Appellate court judgment affirmed.*