**Robert SIMPSON, Plaintiff–Appellant,**

v.

**Tom ROWAN, et al., Defendants–Appellees.**

No. 04–1897.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 2005.

Decided Feb. 28, 2005.

Christopher C. Dickinson, Kathy A. Karcher, Jenner & Block, Chicago, IL, for Plaintiff–Appellant.

Michael W. Tootooian, Ancel, Glink, Diamond, Bush, Dicianni & Rolek, Francis J. Catania, Office of the Cook County State's Attorney, Chicago, IL, Michael W. Condon, Hervas, Sotos, Condon & Bersani, Itasca, IL, for Defendants–Appellees.

Before POSNER, MANION, and WOOD, Circuit Judges.

## ORDER

Collateral estoppel generally bars a plaintiff from relitigating in a suit under 42 U.S.C. § 1983 an issue that was decided against him in earlier state proceedings. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Donald v. Polk County,* 836 F.2d 376, 381–82 (7th Cir.1988). The claim may proceed, however, if the plaintiff did not have a "full and fair opportunity" to litigate the issue in those earlier proceedings. *See Allen,* 449 U.S. at 95, 101 S.Ct. 411; *Nowak v. St. Rita High School,* 197 Ill.2d 381, 258 Ill. Dec. 782, 757 N.E.2d 471, 478 (2001). In this case, the state proceeding was Robert Simpson's criminal trial—a murder trial at which Simpson chose to represent himself—and the issue is whether the defendants violated Simpson's rights under the Fourth Amendment by carrying out an illegal search and seizure. The state trial court decided the issue against Simpson when it denied his motion to suppress evidence found during the search, and that decision was affirmed by the Supreme Court of Illinois. Simpson argues, however, that his lack of legal ability and a history of psychological impairment effectively deprived him of a full and fair opportunity to develop the issue in state court, and that as a matter of equity he should now be allowed to pursue his claim under § 1983.

In May 1992, a bystander was killed during a grocery-store hold-up in Glenwood, Illinois. A few days later, police arrested Lurlarn Young, Simpson's apartment-mate, and obtained her permission (coercively, Simpson claims) to search the apartment and storage locker she shared with Simpson. Entering the apartment without a warrant, the police arrested Simpson and conducted their search, recovering incriminating evidence (some of it from a closed bag within the locker) that was used at Simpson's murder trial.

The state trial court appointed an assistant public defender to represent him, but Simpson was unsatisfied with the amount of time it was taking to prepare his defense. Wanting (for reasons that remain unclear) to get the trial under way more quickly, Simpson told the court that he wished to dismiss his counsel. The trial judge warned Simpson that he would then be left representing himself, and advised him repeatedly of the dangers of self-representation. When Simpson continued to demand an immediate trial, insisting that he was willing to represent himself, the court granted his wish, retaining the public defender as standby counsel. *See People v. Simpson,* 172 Ill.2d 117, 216 Ill.Dec. 671, 665 N.E.2d 1228, 1235–37 (1996).

Before trial, Simpson moved to suppress the evidence resulting from the search of his apartment and locker. The court denied the motion, finding that Lurlarn Young was authorized to and did consent to the search of the apartment, the locker, and the closed bag within the locker. *See People v. Simpson,* 665 N.E.2d at 1241–43.

Simpson went to trial and was eventually found guilty of murder.

In 1993, while his criminal case was still under way, Simpson filed this § 1983 lawsuit alleging, among other things, violation of his rights under the Fourth Amendment. The district court dismissed the case, invoking *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in support of abstention. On Simpson's appeal from that decision (after his conviction but before his appeal to the Illinois supreme court had been decided), we directed the district court to dismiss all of Simpson's claims that were barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), but to stay the case with respect to the Fourth–Amendment claim, which was not *Heck*-barred. *See Simpson v. Rowan,* 73 F.3d 134 (7th Cir.1995).

The Supreme Court of Illinois affirmed Simpson's conviction on direct appeal and on appeal from post-conviction proceedings. *See People v. Simpson,* 172 Ill.2d 117, 216 Ill.Dec. 671, 665 N.E.2d 1228 (1996); *People v. Simpson,* 204 Ill.2d 536, 275 Ill.Dec. 34, 792 N.E.2d 265 (2001). Although Simpson challenged the trial court's denial of his motion to suppress, the supreme court found that he waived that issue "for failure to raise it in any of his or his appointed counsel's post-trial motions." *Simpson,* 665 N.E.2d at 1243. (Counsel had been appointed to assist Simpson in post-trial matters.) The court noted that it could review the issue for plain error if "the evidence was closely balanced or the error was of such magnitude that the accused was denied a fair trial." *Id.* Finding overwhelming evidence of Simpson's guilt, the court concluded that neither of those conditions had been met, and so deemed the matter waived.

With his state-court appeals at an end, Simpson (represented by counsel, as he had been throughout his appeals) successfully moved the district court to lift the stay on his § 1983 lawsuit. The defendants then moved to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(6). They argued that collateral estoppel barred Simpson from relitigating the question of whether the defendants violated the Fourth Amendment, the state trial court having already ruled (and the state supreme court having affirmed) that the search and seizure were legal. The district court granted the motion and dismissed the case with prejudice.

Simpson now argues that he should not be collaterally estopped from litigating his Fourth–Amendment claim. Collateral estoppel (also known as issue preclusion) is applied according to the law of the state whose court rendered the assertedly preclusive decision. *See Allen v. McCurry,* 449 U.S. at 96, 101 S.Ct. 411. Under Illinois law, once the minimum requirements have been met (identical issue in both cases; final judgment on the merits in the earlier case; same party in both cases), a court must consider whether any unfairness will result to the party being estopped. *See Nowak v. St. Rita High School,* 757 N.E.2d at 478. Of particular concern is whether the plaintiff has had a "full and fair opportunity" to litigate the issue: "In deciding whether the doctrine of collateral estoppel is applicable in a particular situation, a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." *Id.*

Simpson argues that although he presented his Fourth–Amendment argument to the state court in his motion to suppress, and the state court ruled squarely on its merits, he nevertheless did not have a full and fair opportunity to properly develop the issue. He points primarily to his lack of skill in conducting his case *pro se,*

but also to his "history of psychological impairment," including attention-deficit disorder, hyperactivity, and impulsiveness. He suggests that these impairments (which he documented with expert affidavits in his state post-conviction proceedings, *see People v. Simpson,* 792 N.E.2d at 281) contributed to his inability to fully and fairly litigate his Fourth–Amendment issue in state court, thus making collateral estoppel inapplicable to his current lawsuit.

In support of this argument, Simpson points to cases from various courts in which a party was similarly unrepresented and unable to present the relevant issue with any competence in the earlier proceedings. *See Salahuddin v. Dalsheim,* No. 94 Civ. 8730 (RWS), 1996 WL 384898, at *8 (S.D.N.Y. July 9, 1996) (concluding that plaintiff's *pro se* status had "combined with other circumstances to hinder his opportunity to litigate the primary issue"); *Cruz v. Root,* 932 F.Supp. 66, 70 (W.D.N.Y. 1996) (noting *pro se* plaintiff's severe mental limitations and suggesting that "one who is arguably incapable of understanding the law and legal proceedings can hardly be held to have been afforded a fair hearing"); *West v. Ruff,* 961 F.2d 1064, 1065–66 (2d Cir.1992) (reversing application of collateral estoppel because, among other reasons, the issue "could not be adequately presented *pro se*"); *Davis v. City of Charleston, Mo.,* 827 F.2d 317, 321 n. 3 (8th Cir.1987) (finding that plaintiff "as a *pro se* litigant before the state court" did not have a full and fair opportunity to litigate the issue); *Clark v. Dep't of Correctional Services,* 564 F.Supp. 787, 789 (S.D.N.Y.1983) (refusing to apply collateral estoppel not merely because of plaintiff's *pro se* status, but because of his confusion and ignorance about legal proceedings).

In none of these cases, however, did the plaintiff deliberately forego the assistance of counsel as Simpson did. In some of them, the plaintiff had unsuccessfully requested or otherwise tried to secure counsel in the earlier proceedings (*Cruz, Davis; Clark*). In others, the plaintiff, similarly lacking counsel, had not had sufficient time or resources to prepare for trial (*Salahuddin; West*). Here, in contrast, it was Simpson himself who refused the assistance of counsel and who did not want more time spent developing his defense. Although that decision may have been irrational, it distinguishes this case from the authorities Simpson cites. Simpson had the opportunity to present his Fourth–Amendment issue to the state trial court, and he made use of that opportunity. We agree with the district court that he is estopped from litigating the same issue in a § 1983 lawsuit.

AFFIRMED.