SYKES, Circuit Judge,
dissenting.
My colleagues have concluded that although the threshold elements of collateral estoppel are satisfied here, the state judge’s ruling on the accommodation issue cannot be given preclusive effect because it was unfair. I respectfully disagree.
In April 2011 plaintiff Linda Reed was diagnosed with tardive dyskinesia, a disabling movement disorder described at length in the majority opinion. At the time of her diagnosis, Reed had a personal-injury case pending in Cook County Circuit Court. She was representing herself. Because her disability affects oral communication and sometimes manifests startling symptoms, she asked for six specific accommodations to assist her in presenting her case to the jury: (1) a note taker; (2) a podium; (3) recesses as needed; (4) an interpreter; (5) a microphone; and (6) an instruction explaining her disability to the jurors so they would understand her symptoms.
The judge granted the first three requests. Reed was permitted to have a friend and a family member at counsel table to help her organize her presentation; she was provided a podium; and the judge allowed recesses when she needed a break. Although the judge did not instruct the jury about the specifics of her disability, he didn’t entirely ignore her request for a jury instruction. Rather, during jury selection, he informed the prospective jurors that Reed had a speech *1110 impediment (that’s how she herself had described it), and he questioned them about their ability to disregard the impairment and fairly decide the case. Also, at several points during the course of the trial, the judge reminded the jurors not to hold Reed’s condition against her. So only two of Reed’s six accommodation requests were denied outright: the court did not provide a microphone or an interpreter.
After the jury returned a defense verdict, Reed moved for a new trial arguing (among other things) that she was a person with a disability under the Americans with Disabilities Act and that the court had failed to adequately accommodate her disability. Before the motion could be heard, however, Reed’s condition deteriorated. She could not travel to Chicago for a hearing on the motion (she lives in Milwaukee), and she was unable to participate over the phone, as she had done for pretrial conferences. Accordingly, the judge decided the motion on the papers, explaining in his written order that he opted to proceed without oral argument because Reed’s “severe speech impediment ... prevents her from communicating in any vocal fashion.” Importantly, Reed’s inability to orally communicate arose after trial, not before or during trial.
The judge denied Reed’s motion for a new trial. Addressing her failure-to-accommodate claim, the judge wrote as follows (and I include his entire analysis because my colleagues have attacked it as unfair):
The plaintiff finally contends that she was not afforded an accommodation of a physical disability. The plaintiff has been a resident of Milwaukee, Wisconsin during all phases of this litigation. In order to allow for her full and meaningful participation, she was allowed to participate by telephone in almost all of the pre-trial hearings. This process worked well, and the parties were always able to fully engage in argument on their pretrial issues. During each of these sessions, the plaintiff always argued her positions thoughtfully and with appropriate levels of forcefulness. Even in spite of sometimes sharp exchanges, she was always cordial to both counsel and the court. ' Almost immediately before the actual trial, the plaintiff began to experience a rapid and noticeable dimin-ishment of speech ability so that her speaking was interrupted by uncontrollable pauses on account of an apparent nervous disorder that forced her into involuntary contortions of the mouth and unintended utterances, most of which consisted of unintelligible sounds. However, she at all times presented as having been fully mentally capable and alert, physically able except for the speech condition, and clearly frustrated whenever she experienced such interruptions. It was necessary to take several steps to accommodate her obvious speech challenge. To begin with, she was allowed to have an additional person at counsel table to assist her in organizing her voluminous materials during the trial. The prospective jurors were asked whether the plaintiffs impediment would prevent them from giving the parties a fair trial, and the sworn jury was reminded several times not to hold her condition against her or the defendant. There were frequent recesses so that the plaintiff could drink water and otherwise comfort herself, and the court was always mindful of her physical challenge to simply speak as she intended. There were occasions when her pauses were so lengthy that the court concluded that she was being indecisive rather than laboring under the impediment, and she was asked to move on, as would any other individual. At those times, she appeared able to fully respond and proceed in a most functional manner. *1111 This court was never of the view that the plaintiff ever labored under any court-induced feeling of being intimidated. She was always allowed wide latitude in the presentation of her case. The court overruled many procedural objections by the defense in order to accommodate her condition, and sustained certain substantive defense objections when appropriate to do so. She was entirely engaging during the jury selection process and never seemed to confuse or irritate the jurors during the evidentiary phase of the trial or during the final arguments. Indeed, it was this court’s observation throughout the trial that the jurors liked her. This court has no doubt but that her readily observable speech impediment concern was accommodated, and that she was thus fully afforded a fair and adequate opportunity to present her case, which she accomplished at a level that far exceeded that of most pro-se litigants in jury trials in spite of her condition.
Reed appealed but did not develop her ADA accommodation argument before the appellate court. Instead, while the appeal was still pending, she sued the state judge in federal court (along with other court' officials, the Cook County Circuit Court, and the State of Illinois). Her new lawsuit alleged that the defendants failed to accommodate her disability during the trial of her personal-injury action and thus violated the ADA, 42 U.S.C. §§ 12131 et seq., and section 504 of the Rehabilitation Act,, 29 U.S.C. § 794. In the meantime, the state appellate court affirmed the judgment, and the Illinois Supreme Court denied review.
The district court dismissed Reed’s suit based on collateral estoppel (also known as issue preclusion), which “bars relitigation of an issue already decided in a prior case.” In re A.W., 231 Ill.2d 92, 324 Ill.Dec. 530, 896 N.E.2d 316, 321 (2008). My colleagues agree that the basic elements of issué preclusion are satisfied here; the accommodation issue was raised and decidr ed in the state-court litigation, which proceeded to final judgment on the merits, and no one disputes the identity of the parties.[1] See id. (explaining the elements of collateral estoppel).
Still, my colleagues refuse to give the state court’s ruling preclusive effect. Here is the key passage in their analysis:
[The plaintiff] knew she needed help to litigate her personal-injury suit, especially having no lawyer. And so she asked for help. Many of her requests were ignored or denied by the judge, who was at times impatient with and even rude to her; and his conclusion that her disability had been adequately accommodated was untenable. There was nothing “fair” in his bestowal of inadequate accommodations, or in his conclusion, in the very ruling on her post-trial motion in which he adjudged her incompetent to make an oral presen *1112 tation, that the accommodations provided for her at trial had been adequate.
Majority Op. at 1108.
It is of course true that collateral estoppel is an equitable doctrine and as such will be applied only when “no unfairness results to the party being estopped.” Nowak v. St. Rita High Sch., 197 Ill.2d 381, 258 Ill.Dec. 782, 757 N.E.2d 471, 478 (2001). Under Illinois law, “[i]n determining whether a party has had a full and fair opportunity to litigate an issue in a prior action, those elements which comprise the practical realities of litigation must be examined.” Id.
Weighing the fairness question in light of the practical realities of assessing the adequacy of accommodations for disabled pro se litigants, I have several points of departure with my colleagues. First and most obviously, the state judge did not ignore or deny “many” of Reed’s requests, as the majority asserts. To the contrary, as I’ve explained, the judge granted most of the accommodations she requested and denied only two — a microphone and an interpreter. Regarding the former, Reed has not claimed that the jury or the witnesses could not hear her. She tells us nothing about the size of the courtroom or her proximity to the jury or witness boxes during trial. If in fact her voice was too faint to be heard without amplification, it’s inconceivable to me that some participant in the trial — the defense attorney, a witness, a juror — would not have spoken up and asked the judge to fix the problem. On this record, it’s hard to see why the failure to provide a microphone could be deemed unreasonable, much less unfair.
Reed does allege that without an interpreter her communications were less effective than her opponent’s. But the judge carefully explained in his post-trial ruling his conclusion that Reed’s disability had been adequately accommodated. In addition to the accommodations mentioned above (a helper at counsel table, recesses as needed, etc.), he noted that Reed was given “wide latitude in the presentation of her case” and he “overruled many procedural objections by the defense in order to accommodate her condition.” He also explained that the jury did not seem confused or irritated by her impairment. “Indeed,” he wrote, “it was this court’s observation throughout the trial that the jurors liked her.” Finally, the judge observed that Reed presented her case “at a level that far exceeded that of most pro-se litigants in jury trials in spite of her condition.” For these reasons (and others reflected in the full text of the decision), the judge concluded that Reed’s disability was appropriately accommodated and she was “fully afforded a fair and adequate opportunity to present her case.”
This thorough ruling, reproduced in full above, cannot reasonably be characterized as “untenable,” as my colleagues assert. Majority Op. at 1108. As the case comes to us, we have no objective basis upon which to find the judge’s ruling unfair and thus refuse to give it preclusive effect.[2] *1113 The majority wrongly implies that because Reed was unable to orally argue her post-trial motion, she must have been unable to orally present her case to the jury. Majority Op. at 1106 (“If she was incapable of ‘communicating in any vocal fashion’ with regard to her post-trial motion, how can she not have needed a microphone and interpreter at the trial to help her overcome her ‘readily observable speech impediment?’ ”). This overlooks that Reed’s condition worsened after trial; only then did oral communication become impossible. Indeed, she has never alleged that she was unable to orally communicate during trial. Rather, she alleges that her communications were periodically interrupted by the distressing symptoms of tardive dyskine-sia.
My colleagues conclude with the following observation:
For one court (the state court) to deny accommodations without which a disabled plaintiff has no chance of prevailing in her trial, and for another court (the federal district court) on the basis of that rejection to refuse to provide a remedy for the discrimination that she experienced in the first trial, is to deny the plaintiff a full and fair opportunity to vindicate her claims.
Majority Op. at 1109. This assumes that the two rejected accommodations (a microphone and an interpreter) were in fact necessary for Reed to present her case— indeed, were so essential that the state judge’s resolution of the accommodation issue cannot be trusted and was downright unfair. For the reasons already explained, I cannot agree.
Clearly my colleagues believe that the state judge botched Reed’s request for accommodation. But mere disagreement with a final ruling in a prior case isn’t a proper basis for a later court to deny its normal preclusive effect. If it were, then few decisions would be final; judges disagree all the time, especially on highly contextual and discretionary judgments (such as how to accommodate a litigant’s disability). The majority’s approach to collateral estoppel allows repetitive litigation whenever the second-in-line court disagrees strongly enough with the first. That approach unsettles preclusion doctrine.
Because the elements of collateral estop-pel are satisfied and it’s not unfair to preclude Reed from relitigating the accommodation issue, I would affirm the judgment of the district court dismissing this suit.

. The majority hints that Reed's suit raises issues beyond the adequacy of the state court’s accommodation of her disability. Majority Op. at 1109 ("[T]he present, federal litigation encompasses the full range of issues concerning the scope and application of federal disability law to her plight."). That’s not correct. Reed has alleged a single failure-to-accommodate claim under the ADA and the Rehabilitation Act. Both statutes prohibit disability discrimination, see 42 U.S.C. § 12132 (the ADA); 29 U.S.C. § 794 (the Rehabilitation Act), and failing to accommodate a disabled person is one form of disability discrimination. Reed alleges that the defendants violated the ADA and the Rehabilitation Act (i.e., they committed an act of disability discrimination) by inadequately accommodating her disability during her state-court trial. She neither alleges nor argues that the defendants committed any other acts of disability discrimination.

. It's worth mentioning that Reed has never argued that applying collateral estoppel is unfair for the reasons adopted by my colleagues. Instead, she argued that applying collateral estoppel places her in an unfair catch-22: If she had not requested accommodations in state court, the ADA would not be implicated, but by asking the state judge for an accommodation, she is estopped from litigating the issue in federal court. Reed raised this argument for the first time in a Rule 59(e) motion in the district court, see Fed.R.Civ.P. 59(e), and the district court correctly rejected it as an improper basis for relief under Rule 59(e), see Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir.2000) (explaining that Rule 59(e) is not a vehicle to raise new arguments not presented to the district court prior to judgment). Regardless, because the state courts are equally competent to resolve disability accommodation issues, I see no inherent unfairness here.