# Illinois Official Reports

## Supreme Court

***Ameren Transmission Co. of Illinois v. Hutchings*, 2018 IL 122973**

| | |
|---|---|
| Caption in Supreme Court: | AMEREN TRANSMISSION COMPANY OF ILLINOIS, Appellant, v. RICHARD L. HUTCHINGS *et al.*, Appellees. |
| Docket Nos. | 122973, 122985, 122986, 122987, 122988, 122989, 122992, 122993, 122994, 122996, 122997, 122998, 122999, 122000, 122001, 122002, 122003, 122004, 122005, 122006, 122007, 122008, 122009, 122011, 122012, 122013, 122014, 122015, 122016, 122017, 122018, 122019, 122020, 122021 cons. |
| Filed | October 18, 2018 |
| Rehearing denied | November 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Edgar County, The Hon. Craig H. DeArmond and the Hon. James R. Glenn, Judges, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Albert D. Sturtevant and Nikhil Vijaykar, of Whitt Sturtevant LLP, of Chicago, David A. Rolf and Lisa A. Petrilli, of Sorling Northrup, of Springfield, and Matthew R. Tomc, of St. Louis, Missouri, for appellant.<br><br>Michael T. Reagan, of Ottawa, and S. Craig Smith, of Asher & Smith, of Paris, for appellees. |

Laura Harmon and Garrett Thalgott, of Illinois Agricultural Association, of Bloomington, *amicus curiae*.

Anastasia M. O'Brien and Richard G. Bernet, of Exelon Business Services Company, Clifford W. Berlow, of Jenner & Block LLP, both of Chicago, and Matthew E. Price (*pro hac vice*), of Jenner & Block LLP, of Washington, D.C., for *amicus curiae* Commonwealth Edison Company.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Burke, Theis, and Neville concurred in the judgment and opinion.

Justice Garman specially concurred, with opinion.

Justice Kilbride concurred in part and dissented in part, with opinion.

Justices Kilbride and Garman dissented upon denial of rehearing, without opinion.

## OPINION

¶ 1    To facilitate the construction of a high-voltage transmission line, Ameren Transmission Company of Illinois (ATXI) filed eminent domain complaints against several landowners located in Edgar County, Illinois (Landowners). The Landowners filed a traverse and motion to dismiss, and the circuit court dismissed every complaint on the grounds that section 8-406.1 of the Public Utilities Act (220 ILCS 5/8-406.1 (West 2016)), as it existed at the time, is unconstitutional both on its face and as applied to the Landowners. This direct appeal followed. Ill. S. Ct. R. 302(a) (eff. Oct. 4, 2011).

¶ 2                              BACKGROUND

¶ 3    The Public Utilities Act (Act) (220 ILCS 5/1-101 *et seq.* (West 2010)) requires a public utility to obtain a certificate of public convenience and necessity from the Illinois Commerce Commission (Commission) before transacting business or beginning new construction within Illinois. Section 8-406 of the Act sets forth the requirements for obtaining a certificate. *Id.* § 8-406. Effective July 28, 2010, the legislature enacted section 8-406.1 of the Act (*id.* § 8-406.1), which permits a public utility to apply for a certificate using an expedited procedure when seeking to construct a new high-voltage electric service line and related facilities.

¶ 4    On November 7, 2012, ATXI petitioned the Commission for a certificate of public convenience and necessity that would authorize ATXI "to construct, operate and maintain a new 345 kV electric transmission line *** and related facilities, including certain new or

- 2 -

expanded substations, within *** Illinois." ATXI's proposed plan was designated the Illinois Rivers Project (Project), and portions of the Project were to be located within several Illinois counties, spanning 375 miles across the state. ATXI elected to file its petition pursuant to the expedited process set forth in section 8-406.1.

¶ 5    ATXI's proposal included both a primary route and an alternate route, and the Commission sent notice of the impending proceedings to several thousand potentially impacted landowners. After the notices went out, certain interested and affected parties sought and were granted leave to intervene. Some of these intervenors then proposed alternative routes of their own for certain segments of the Project. One such alternative was proposed by an intervening group named Stop Coalition, and it involved the "Kansas-Indiana State Line" segment of the Project. In the end, the Commission approved the Project and granted ATXI a certificate of public convenience and necessity, based on a route that included Stop Coalition's alternative proposal for the Kansas-Indiana State Line segment.

¶ 6    Shortly thereafter, several landowners from the Kansas-Indiana State Line segment of the Project filed a petition to intervene. The petition alleged that, although these landowners owned property that was either on or directly adjacent to the alternative route proposed by Stop Coalition, they did not receive notice of that fact until after the Commission had entered its decision approving the Project. Accordingly, along with their petition to intervene, these landowners filed both a motion to strike the Commission's proceedings relating to the Kansas-Indiana State Line segment of the Project and an application for rehearing. The Commission denied both the motion to strike and the application for rehearing, but it then granted the petition to intervene for the limited purpose of accommodating appellate review.

¶ 7    A direct appeal to the appellate court followed (see 220 ILCS 5/10-201(a) (West 2016)), and the landowners impacted by the Kansas-Indiana State Line segment of the Project were among the parties to that appeal. *Adams County Property Owners & Tenant Farmers v. Illinois Commerce Comm'n*, 2015 IL App (4th) 130907. In a lengthy opinion, the appellate court affirmed the Commission's decision approving the Project and granting the certificate of public convenience and necessity. *Id.* ¶ 102. In the course of doing so, the appellate court considered and rejected the affected landowners' argument that their due process rights were violated because they never received notice of Stop Coalition's alternative route proposal. *Id.* ¶¶ 78-80.

¶ 8    Following disposition of the direct administrative appeal, ATXI attempted unsuccessfully to negotiate easement rights with the Landowners. Consequently, in early 2016, ATXI sought and secured from the Commission authority to obtain the necessary easements by eminent domain. Thereafter, ATXI filed a total of 35 eminent domain complaints against the Landowners. The Landowners, in turn, filed a traverse and motion to dismiss. Although the Landowners asserted traditional traverse claims, they ultimately did not develop or defend those claims in the subsequent proceedings.[1]  Instead, the Landowners focused on their motion

---

[1]At the hearing on the Landowners' traverse and motion to dismiss, counsel for the Landowners conceded that ATXI had established a *prima facie* case for the propriety of the taking, that the Landowners had made no attempt to rebut that presumption, and that consequently, if the Landowners' motion to dismiss were denied, their traverse would also have to be denied. Likewise, in its order granting the Landowners' motion to dismiss, the circuit court stated that, "[a]lthough the [Landowners] refused to concede their claims contained in the Traverse were not supported by the record, they

to dismiss, which argued that ATXI's eminent domain complaints must be dismissed because the Landowners' due process rights were violated during the proceeding in which the Commission granted the certificate of public convenience and necessity. More specifically, the Landowners argued that their due process rights were violated because they were never notified that their property would be affected by the route that the Commission ultimately approved.

¶ 9 On September 25, 2017, the circuit court of Edgar County entered a 24-page written order granting the Landowners' motion to dismiss on the grounds that the applicable version[2] of section 8-406.1 was unconstitutional both on its face and as applied to the Landowners. In support of its conclusion that section 8-406.1 was unconstitutional on its face, the circuit court explained:

"220 ILCS 5/8-406.1 as it existed at the time of these proceedings was facially unconstitutional. It failed to require personal notice by registered mail or other means which would ensure notice to any landowner whose property may be considered for primary or alternate routes proposed throughout the certification process.

By requiring such notice only to landowners identified in the application and at public hearing, it deprived landowners whose property was proposed in alternate routes later suggested by the utility or any intervenor, of the same opportunity to participate or object."

Accordingly, the circuit court dismissed all 35 of ATXI's eminent domain complaints.

¶ 10 ATXI appealed the circuit court's decision directly to this court. Ill. S. Ct. R. 302(a) (eff. Oct. 4, 2011).

¶ 11                                                    ANALYSIS

¶ 12 We need not reach the merits of the circuit court's due process analysis, as the circuit court clearly lacked the necessary jurisdiction to review the legality and constitutionality of the Commission's administrative proceedings.

¶ 13 Illinois courts are courts of general jurisdiction and enjoy a presumption of subject-matter jurisdiction. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 14. That presumption is inapplicable, however, where administrative proceedings are involved. *Id.* Illinois courts are empowered to review administrative actions only "as provided by law." Ill. Const. 1970, art. VI, § 6 (appellate court), § 9 (circuit court). When the legislature has, through law, prescribed procedures for obtaining judicial review of an administrative decision, a court is said to exercise "special statutory jurisdiction" when it reviews an administrative decision pursuant to that statutory scheme. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2014 IL 116642, ¶ 10. Special statutory jurisdiction is limited by the language of the act conferring it. *Id.* A court has no powers from any other source. *Id.* A party seeking to invoke a court's special statutory jurisdiction must therefore comply strictly

presented no evidence at the hearing in that regard." That being said, the trial court's order concludes by stating, "[h]aving granted the Motion to Dismiss, the Court does not need to address the Traverse."

[2]Section 8-406.1 has since been amended. See Pub. Act 99-399 (eff. Aug. 18, 2015) (amending 220 ILCS 5/8-406.1).

- 4 -

with the procedures prescribed by the statute. *Id.* If the mode of procedure set forth in the statute is not strictly pursued, no jurisdiction is conferred on the court. *Id.*

¶ 14 This court has held that "[r]eview of final decisions of the Commission *** involves the exercise of special statutory jurisdiction and is constrained by the provisions of the Public Utilities Act." *Illinois Landowners Alliance, NFP v. Illinois Commerce Comm'n*, 2017 IL 121302, ¶ 29; see also *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 387 (2008). The relevant provision of the Act is section 10-201, and it states that a party affected by a rule, regulation, order, or decision of the Commission has 35 days to "appeal to the appellate court of the judicial district in which the subject matter of the hearing is situated *** for the purpose of having the reasonableness or lawfulness of the rule, regulation, order or decision inquired into and determined." 220 ILCS 5/10-201(a) (West 2016). Section 10-201 goes on to state that, in such cases, the appellate court "shall reverse a Commission rule, regulation, order or decision, in whole or in part, if it finds that *** [t]he proceedings or manner by which the Commission considered and decided its rule, regulation, order or decision were in violation of the State or federal constitution or laws, to the prejudice of the appellant." *Id.* § 10-201(e)(iv)(D). Thus, under the plain language of the Act, the power to review a final decision of the Commission, including whether "[t]he proceedings or manner by which the Commission considered and decided its rule, regulation, order or decision were in violation of the State or federal constitution or laws," is a power conferred on the appellate court by the special statutory jurisdiction established in section 10-201. Absent such jurisdiction, a court has no power to review the legality or constitutionality of Commission proceedings.

¶ 15 The problem here is that the circuit court below was not exercising the special statutory jurisdiction conferred by section 10-201 when it determined that the Commission's proceedings in relation to the Project were in violation of due process. Rather, it was sitting as a court of general jurisdiction charged with adjudicating the merits of ATXI's eminent domain complaints. As such, the circuit court below had no authority whatsoever to review either the Commission's decision itself or whether the proceedings leading up to that decision "were in violation of the State or federal constitution or laws." Section 10-201 specifically reserves such questions for the appellate court exercising its statutory power of direct administrative review, which is exactly what the *Adams County* court was doing back in 2015 when it considered and rejected the very same due process challenge at issue here. *Adams County*, 2015 IL App (4th) 130907, ¶¶ 78-80. In other words, there is an explicit statutory scheme in place for reviewing the legality and constitutionality of the Commission's administrative proceedings, and the subsequent eminent domain litigation forms no part of it.

¶ 16 Given this, we agree with ATXI that the circuit court's decision granting the Landowners' motion to dismiss must be reversed. As discussed above, the circuit court's sole rationale for granting those motions was its conclusion that the Commission's proceedings were in violation of due process. As the legality and constitutionality of the Commission's proceedings was a question beyond the circuit court's power to decide, its answer to that question cannot form the basis for dismissing the complaints in this case. Accordingly, the judgment of the circuit court is hereby reversed.

¶ 17                                          CONCLUSION

¶ 18        For the foregoing reasons, the judgment of the circuit court of Edgar County is reversed, and we remand the cause for further proceedings.

¶ 19        Reversed and remanded.

¶ 20        JUSTICE GARMAN, specially concurring:

¶ 21        Defendants are a group of landowners who claim that the Public Utilities Act instructed the Illinois Commerce Commission and the circuit court to transfer their property rights to plaintiff Ameren Transmission Company of Illinois (ATXI) without affording them due process of law. The majority does not address the substance of defendants' complaint but instead finds that the circuit court could not consider their argument because it lacked jurisdiction. I disagree with this reasoning, but I agree with the conclusion to reverse the circuit court's order.

¶ 22                                A. The Circuit Court's Jurisdiction

¶ 23        The Illinois Constitution of 1970 grants circuit courts general subject-matter jurisdiction over "all justiciable matters." Ill. Const., art. VI, § 9. One such justiciable matter is eminent domain (735 ILCS 30/10-5-10(a) (West 2010)). ATXI cannot plausibly claim that the circuit court lacked jurisdiction over these proceedings; after all, ATXI is the plaintiff. In the course of those eminent domain proceedings, the circuit court found that section 8-406.1 of the Public Utilities Act (220 ILCS 5/8-406.1 (West 2012)) and the Commission proceedings under that statute violated the due process clauses of the United States and Illinois Constitutions. Section 8-406.1 established the Commission's expedited procedure for granting certificates of public necessity, which in turn created the "rebuttable presumption" that ATXI relied on in its eminent domain petition. *Id.*; 735 ILCS 30/5-5-5(c) (West 2014).

¶ 24        The majority finds that the circuit court lacked jurisdiction to find that section 8-406.1 of the Public Utilities Act and the Commission proceedings violated the due process clause. The majority certainly is correct that the circuit court lacked jurisdiction to review a challenge to the Commission's certificate of public necessity. The Illinois Constitution states that Illinois's circuit courts and appellate court have jurisdiction to review administrative action only "as provided by law." Ill. Const. 1970, art. VI, §§ 6, 9. Section 10-201(e)(iv)(D) of the Public Utilities Act grants the appellate court jurisdiction to reverse a "Commission rule, regulation, order or decision, in whole or in part, if it finds that *** [t]he proceedings or manner by which the Commission considered and decided its rule, regulation, order or decision were in violation of the State or federal constitution or laws, to the prejudice of the appellant." 220 ILCS 5/10-201(e)(iv)(D) (West 2016). No comparable provision grants the circuit court jurisdiction to review a Commission rule, regulation, order, or decision. If the circuit court had held merely that the Commission failed to follow the Public Utilities Act, this would have been "review of [an] administrative action," which only the appellate court could exercise.

¶ 25        However, the circuit court did not conclude that only the Commission's *decision* was unconstitutional. It also held that section 8-406.1 of the Public Utilities Act was unconstitutional.

¶ 26        The majority finds either that section 10-201(e)(iv)(D) instructs the appellate court to consider the constitutionality of the Public Utilities Act in addition to the Commission

certificate or that this distinction between the Act and the Commission decision is irrelevant. The majority's analysis is brief and does not elaborate on its reasoning.

¶ 27 If the majority finds that the appellate court's authority to review the Commission certificate of public necessity included the authority to review the Public Utilities Act, it is mistaken for two reasons. First, section 10-201(e)(iv)(D) does not state this. Section 10-201 directs the appellate court to reverse a "Commission rule, regulation, order or decision, in whole or in part, if it finds that *** [t]he proceedings or manner by which the Commission considered and decided its rule, regulation, order or decision were in violation of the State or federal constitution or laws, to the prejudice of the appellant." *Id.* Nothing in the plain language of this statute strips the circuit court of jurisdiction to consider the constitutionality of the Public Utilities Act, which is not a "Commission rule, regulation, order or decision" but a General Assembly statute.

¶ 28 Second, if section 10-201(e)(iv)(D) was intended to deprive the circuit courts of jurisdiction to review the constitutionality of the Public Utilities Act and give jurisdiction exclusively to the appellate court, then section 10-201(e)(iv)(D) would be unconstitutional. The Illinois Constitution does not allow the General Assembly to remove matters from circuit courts' general jurisdiction. Circuit courts' jurisdiction derives from the Illinois Constitution, and the General Assembly may not extend or reduce it. *McCormick v. Robinson*, 2015 IL 118230, ¶ 23.

¶ 29 One exception to circuit courts' constitutional general jurisdiction is that "Circuit Courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, § 9. Similarly, the appellate court has jurisdiction to review administrative action as provided by law. Ill. Const. 1970, art. VI, § 6. Under these provisions, review of administrative action is considered "special statutory jurisdiction" that exists only through a grant from the General Assembly. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2014 IL 116642, ¶ 10. If the General Assembly has not provided the circuit court with jurisdiction to review a certain administrative action, the circuit court lacks jurisdiction to review that action. The majority claims that this exception allows the Public Utilities Act to grant the appellate court, not the circuit court, the power to review the constitutionality of the Public Utilities Act.

¶ 30 I disagree with the majority's interpretation, which dramatically expands the General Assembly's power to reduce circuit courts' jurisdiction. No Illinois court has ever considered reviewing the constitutionality of a statute to be "review [of] administrative action" simply because that statute implicates an agency's procedural rules. The majority cites only a few cases in its short analysis. In *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, the court concluded that the statutory requirements for appealing a decision of the Workers' Compensation Commission had not been met. That case was a direct appeal of a decision of an administrative agency. Unlike this case, there was no challenge to the constitutionality of a statute. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370 (2008), and *People ex rel. Madigan*, 2014 IL 116642, also involved direct review of Commission orders and questions about the statutory requirements for jurisdiction. *Illinois Landowners Alliance, NFP v. Illinois Commerce Comm'n*, 2017 IL 121302, was a direct appeal of a Commission order granting a certificate of public necessity. The court concluded that the Commission had applied the Public Utilities Act incorrectly. None of these cases involve a court lacking jurisdiction to review the constitutionality of a statute.

- 7 -

¶ 31    Nor does ATXI cite any precedent that deprives the circuit court of jurisdiction to conduct judicial review of the constitutionality of a statute. ATXI relies on *Fredman Brothers Furniture Co. v. Department of Revenue*, in which the court considered whether a 35-day filing period to appeal an administrative order created a jurisdictional bar. 109 Ill. 2d 202, 209 (1985). There is no indication that any party in *Fredman Brothers* challenged the constitutionality of the Retailers' Occupation Tax Act or the Administrative Review Act, which created the administrative framework for the litigation. The question was whether the plaintiff's failure to follow the statutory requirements deprived the circuit court of jurisdiction over an appeal of the agency's decision. ATXI also relies on *Collinsville Community Unit District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175 (2006); *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2014 IL 116642; *Illini Coach Co. v. Illinois Commerce Comm'n*, 408 Ill. 104 (1951); *Commonwealth Edison Co. v. International Brotherhood of Electrical Workers, Local Union No. 15*, 961 F. Supp. 1154 (N.D. Ill. 1996). None of these cases deny circuit courts' jurisdiction in constitutional challenges to state statutes.

¶ 32    The majority's error results from its misunderstanding of what claims the General Assembly may constitutionally assign to the appellate court. Only appeals challenging an agency's final determination itself are reserved for appellate courts. For example, in *ESG Watts, Inc. v. Pollution Control Board*, 286 Ill. App. 3d 325 (1997) a landowner applied for permits to operate a landfill, but the Illinois Pollution Control Board denied his application. On his direct appeal to the Third District, the landowner argued that the board's decision was against the manifest weight of the evidence. *Id.* at 330, 336. This is the sort of challenge that section 5/10-201(e)(iv)(D) directs to the appellate court. 220 ILCS 5/10-201(e)(iv)(D) (West 2016). Once the case reached the appellate court, that court could consider the landowner's constitutional challenge to the statute. *ESG Watts, Inc.*, 286 Ill. App. 3d at 334.

¶ 33    Although not squarely on point, this court's decision in *Board of Education of Peoria School District No. 150 v. Peoria Federation of Support Staff, Security/Policeman's Benevolent & Protective Ass'n Unit No. 114*, 2013 IL 114853, supports my conclusion that "review of administrative action" does not include assessing the constitutionality of a General Assembly statute. In that case a statute removed jurisdiction over certain labor disputes from one administrative agency and placed those disputes under the authority of a different agency. The plaintiffs filed a declaratory judgment action arguing that this statute was unconstitutional special legislation. This court found that the circuit court had jurisdiction to consider the constitutional challenge. We explained that "the parties cite no case with comparable facts, *i.e.*, a constitutional challenge to a statute that would potentially divest one labor board (the IELRB) of jurisdiction, with specified dispute resolution procedures, and confer it upon another (the ILRB), with different procedures. Disposition of the constitutional issue dictates which of the two boards has jurisdiction of this matter. That decision is properly one for the courts, and, in the first instance, the circuit court." *Id.* ¶ 37.

¶ 34    Admittedly *Board of Education of Peoria* concerned whether the courts or an administrative agency had jurisdiction, not which level of state court had jurisdiction. However, if reviewing the constitutionality of a statute constitutes "review [of] administrative action," as the majority concludes, then administrative agencies themselves would be capable of considering this question. For example, if reviewing the constitutionality of the Public Utilities Act is review of "administrative action" under article VI, section 9, then the

Commission's administrative law judge should be capable of considering the constitutional challenge. But this court in *Board of Education of Peoria* expressly disavowed this conclusion, stating that "administrative agencies have no authority to declare statutes unconstitutional or even to question their validity." *Id.* ¶ 38. Instead, the courts, and specifically the circuit courts, have jurisdiction over such questions. *Id.* ¶ 37.

¶ 35 In its brief opinion, the majority justifies this expansion of the General Assembly's power simply by citing article VI, section 9, but that text does not support the majority's claim. Article VI, section 9, states only that "Circuit Courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, § 9. It is not obvious why the phrase "administrative action" should include a statute passed by the General Assembly simply because that statute governs an administrative agency's procedures, and the majority provides no justification for this strained interpretation.

¶ 36 One might argue that, regardless of the circuit court's jurisdiction to consider the constitutionality of the Public Utilities Act, my distinction between the Public Utilities Act and the Commission order is irrelevant. Even if the circuit court could strike down the Public Utilities Act as unconstitutional, the objection might say, the court would still need to consider the Commission's order itself. But the circuit court lacked jurisdiction to review this order.

¶ 37 Because the majority disregards the distinction between the Public Utilities Act and the Commission certificate of public necessity, it fails to explain why the circuit court should continue to apply the Commission certificate even after the court invalidated the underlying statute. It is not self-evident that the circuit court should acknowledge the Commission certificate after finding that the statute that created it was unconstitutional. Moreover, even if the Commission's certificate of public necessity survives the invalidation of the statute that produced it, that invalidation could still have effects in the eminent domain proceeding based on that certificate. The circuit court was required, under section 5-5-5(c) of the Eminent Domain Act, to afford a rebuttable presumption of public necessity to a Commission certificate of public necessity. 735 ILCS 30/5-5-5(c) (West 2014). The circuit court reasonably considered the constitutionality of the statute that produced the certificate. It might conclude that defendants had overcome that presumption by showing that the Public Utilities Act denied them due process of law, or it might conclude that affording a rebuttable presumption to a constitutionally deficient certificate also denied defendants due process of law. Admittedly, the circuit court's order does not explore these possibilities. The majority's dismissal based on lack of jurisdiction, however, forecloses these possibilities entirely and without any discussion.

¶ 38 The majority's flawed analysis raises significant threats to individual rights. The majority's approach would allow for the following possibility: a utility petitions the Commission for a certificate of public necessity to acquire two lots owned by Alice and Brian. Alice is not notified of the Commission proceedings and does not participate in them. Brian is notified of the proceedings and challenges them, including appealing the decision to the appellate court. The appellate court rejects Brian's challenge and upholds the Commission's order. The utility initiates eminent domain proceedings against both Alice and Brian. Alice argues that the statute that allowed the utility to petition for a certificate without notifying her unconstitutionally deprived her of due process of law. Under the majority's approach, the circuit court would lack jurisdiction to hear this argument but would retain jurisdiction over the

eminent domain proceedings. Assuming for the moment that Alice had the right to participate in the Commission proceedings, the circuit court would authorize the utility to seize Alice's land even though Alice never had the opportunity to participate in those proceedings, regardless of the Public Utility Act's constitutionality.

¶ 39 If defendants were deprived of property rights during the Commission proceedings and if they did not participate in *Adams County Property Owners & Tenant Farmers v. Illinois Commerce Comm'n*, 2015 IL App (4th) 130907, then these eminent domain proceedings represent their first opportunity to challenge the constitutionality of the Public Utilities Act. The majority finds that the circuit court had jurisdiction to take away defendants' property but lacked jurisdiction to consider defendants' constitutional challenge to that taking. The majority's opinion would leave some defendants without any opportunity to assert their constitutional rights.

¶ 40                                            B. Issue Preclusion

¶ 41 I find the majority's approach especially problematic because we can reach the same result without issuing an opinion that has the potential to be so broadly applicable without being adequately explained. This case differs from the hypothetical with Alice and Brian because these eminent domain proceedings were not defendants' first opportunity to assert their challenge to the Public Utilities Act. They raised the same arguments in *Adams County*, and the appellate court rejected those arguments. *Id.* ¶ 76.

¶ 42 Issue preclusion bars a litigant from raising an argument that the litigant has already raised in a prior case. Issue preclusion applies when there is (1) a final judgment on the merits from a court of competent jurisdiction, (2) identity of the party to be bound by the prior litigation, and (3) an identical issue to the prior litigation. *Gumma v. White*, 216 Ill. 2d 23, 38 (2005). The issue must have been actually litigated and necessary for judgment. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001).

¶ 43 After the Commission issued the certificate of public necessity to ATXI, a group of landowners—named Edgar County Citizens Are Entitled to Due Process (ECCDP)—participated in the appeal of that certificate to the Fourth District. *Adams County*, 2015 IL App (4th) 130907, ¶ 69. Although the appellate court discussed some procedural problems with ECCDP's petition to intervene, the court also found that the Commission had impliedly given ECCDP permission to intervene, so ultimately it concluded "we find it appropriate to address the merits of [ECCDP's] appeal." *Id.* ¶¶ 76, 78. This was a final adjudication on the merits.

¶ 44 ECCDP argued that the Commission had failed to notify them of the pending proceedings regarding the routing of the Illinois Rivers Project. Specifically they argued "that the lack of a clear notice requirement in section 8-406.1 of the Utilities Act renders the statute unconstitutional." *Id.* ¶ 69. The *Adams County* court rejected this argument, finding that the Commission proceedings did not convey any property rights, so no process was due to ECCDP. *Id.* ¶¶ 51, 69, 80. This argument was identical to the argument that defendants raised before the circuit court here.

¶ 45 ECCDP's due process rights argument was actually litigated. The appellate court expressly considered the same arguments that defendants raise in this case. It was also necessary for the judgment against ECCDP. The *Adams County* court moved past the factual disagreement over

whether notice was actually mailed because it found that no notice was necessary. *Id.* ¶ 76. The majority opinion here seems to acknowledge all of this when it comments that the *Adams County* court "considered and rejected the very same due process challenge at issue here." *Supra* ¶ 15.

¶ 46        The only remotely contestable component of issue preclusion here is the "identity of the parties" prong. ATXI concedes that, although the majority of defendants here participated in the *Adams County* decision, some of the defendants in this eminent domain proceeding were not named parties in *Adams County*. Nevertheless, defendants here stipulated to be treated as parties to that earlier litigation. The stipulation states that "the defendants—appearing under the title 'Edgar County Citizens are Entitled to Due Process'—filed a motion to strike the certificate proceedings" in *Adams County*. This stipulation indicates that defendants here considered themselves to have at least an identity of interests with the ECCDP in *Adams County*, which is all that is required to satisfy this component of issue preclusion. *Agolf, LLC v. Village of Arlington Heights*, 409 Ill. App. 3d 211, 220 (2011).

¶ 47        All of the components of issue preclusion are satisfied in this case. Rather than rely on this basis to resolve the appeal, the majority adopts a controversial and unwarranted approach to the circuit court's jurisdiction to conduct judicial review of a statute of the General Assembly. It adopts this unwarranted approach with insufficient discussion. I respectfully disagree with the majority's analysis, but for the reasons stated I would also reverse the circuit court's decision.

¶ 48        JUSTICE KILBRIDE, concurring in part and dissenting in part:

¶ 49        I partially concur with the majority's conclusion to reverse the circuit court's order, but I disagree with its reasoning, and in that respect, I join Part A of Justice Garman's special concurrence on the circuit court's jurisdiction. I agree with Justice Garman that the majority's flawed jurisdictional analysis raises significant threats to individual rights. *Supra* ¶ 38 (Garman, J., specially concurring). I disagree, in part, with Part B of Justice Garman's special concurrence and her conclusion that all of the landowners are barred from challenging the constitutionality of section 8-406.1 of the Public Utilities Act (220 ILCS 5/8-406.1 (West 2016)), based on the appellate court rejecting the same arguments in *Adams County Property Owners & Tenant Farmers v. Illinois Commerce Comm'n*, 2015 IL App (4th) 130907, ¶ 76. I would hold that issue preclusion does not bar those landowners who were not parties to *Adams County* from challenging the constitutionality of section 8-406.1 of the Public Utilities Act in the eminent domain proceedings.

¶ 50        I agree with Justice Garman that the landowners' due process rights argument was actually litigated in *Adams County*. Unfortunately, this court denied the landowners' petition for leave to appeal in that case. Justice Garman notes in her special concurrence, "[t]he only remotely contestable component of issue preclusion here is the 'identity of the parties' prong." *Supra* ¶ 46. The special concurrence acknowledges that "some of the defendants in this eminent domain proceeding were not named parties in *Adams County*." *Supra* ¶ 46. However, Justice Garman concludes that the landowners who were not named in *Adams County* "have at least an identity of interests with the ECCDP in *Adams County*, which is all that is required to satisfy this component of issue preclusion," based on the landowners stipulating to be treated as parties to the *Adams County* litigation. *Supra* ¶ 46. Nevertheless, I would hold that the

- 11 -

requirements of due process prohibit the application of *res judicata* and issue preclusion to bar a claim by the landowners who were not parties in *Adams County* because the right sought to be enforced is personal in nature.

¶ 51    In *Richards v. Jefferson County*, 517 U.S. 793, 794-95 (1996), the United States Supreme Court considered whether an action challenging the validity of a tax was barred by a judgment upholding the validity of the tax in a previous suit involving different taxpayers. The Supreme Court held that application of *res judicata* was inconsistent with principles of due process where the taxpayers in the former action "did not sue on behalf of a class; their pleadings did not purport to assert any claim against or on behalf of any nonparties; and the judgment they received did not purport to bind any *** taxpayers who were nonparties." *Richards*, 517 U.S. at 801. The Supreme Court specifically noted that the underlying right asserted by the taxpayers was "personal in nature." *Richards*, 517 U.S. at 802 n.6. Here, it is undisputed that many of the landowners in this eminent domain action were not parties in the *Adams County* appeal. Because the rights of the landowners who did not participate in *Adams County* are "personal in nature," I believe that applying the doctrine of *res judicata* to them results in a denial of due process. *Res judicata* is an equitable doctrine and "will not be applied where it would be fundamentally unfair to do so." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001). In my view it would be fundamentally unfair and inequitable to apply *res judicata* in a manner that results in the denial of due process for the landowners who did not participate in *Adams County*.

¶ 52    For these reasons, I believe the court should address the claim by the landowners who were not parties in *Adams County* that section 8-406.1 of the Public Utilities Act is unconstitutional both facially and as applied.