NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250130-U

NO. 4-25-0130

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 4, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MPOWER ENERGY NJ LLC, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| THE ILLINOIS COMMERCE COMMISSION, | ) | No. 24CH59 |
| COMMONWEALTH EDISON COMPANY, | ) | |
| NORTHERN ILLINOIS GAS COMPANY, and THE | ) | Honorable |
| PEOPLES GAS LIGHT AND COKE COMPANY, | ) | Robin L. Schmidt, |
|     Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court dismissed the plaintiff's appeal as moot, finding it could grant no effectual relief.

¶ 2    In November 2024, the Illinois Commerce Commission (ICC) notified Mpower Energy NJ LLC (Mpower), that Mpower's certificates to act as an alternative gas and electricity supplier in Illinois had been revoked. The following month, defendants Commonwealth Edison Company (CE), Northern Illinois Gas Company (NICOR), and the Peoples Gas Light and Coke Company (PGL), notified Mpower that they intended to cancel services to MPower's customers because of the revocation. Mpower then filed a complaint against the ICC, CE, NICOR, and PGL in the trial court, seeking injunctive relief requiring defendants to reinstate Mpower's certificates and maintain services to their customers. Ultimately, the court dismissed Mpower's complaint with prejudice for lack of subject matter jurisdiction and denied its motion to amend

its complaint. Mpower appeals, arguing the trial court erred in finding it lacked subject matter jurisdiction, denying its motion to amend, and dismissing its complaint with prejudice.

¶ 3        We dismiss the appeal as moot.

¶ 4                    I. BACKGROUND

¶ 5        In Illinois, customers have the option to purchase natural gas or electricity from a supplier other than the utility in their service territory. See generally 220 ILCS 5/19-100 *et seq.* (West 2024). When a customer contracts with an "alternative retail electric supplier" (ARES) or "alternative gas supplier" (AGS), the natural gas or electricity utility continues to deliver the natural gas or electricity to the customer, and the AGS or ARES supplies the electricity or gas through the utility's delivery infrastructure. Every AGS and ARES must receive a certificate to operate in Illinois from the ICC. See *id.* §§ 16-115(a), 19-110(b). Without such certificates, a company is not permitted to supply gas or electricity to customers.

¶ 6        On December 6, 2024, Mpower filed its complaint in the trial court in Sangamon County. According to the complaint, in December 2017, Mpower received certificates of service authority from the ICC permitting Mpower to act as an ARES or AGS in Illinois. After receiving these certificates, MPower acted as an alternative supplier in the state. In November 2024, MPower received a notice from the ICC stating that in February 2023, the Illinois Secretary of State revoked MPower's admission as a limited liability company in Illinois because Mpower had failed to file an annual report under the Illinois Limited Liability Company Act. See 805 ILCS 180/50-1 (West 2022). As a result, Mpower's certificates of service authority were revoked, as well. The complaint further alleged that on December 3, 2024, CE notified Mpower that it would cancel services to Mpower's customers. The following day, Mpower received notice that NICOR and PGL would also cancel services to its customers.

¶ 7    In its complaint, Mpower claimed that the Illinois Secretary of State failed to send notice that Mpower's license to transact business in Illinois would be revoked. Mpower asserted, "Accordingly, the ICC's cancellation of MPower's ARES and AGS licenses was equally improper." Mpower sought a judgment finding the ICC "was without authority and/or acted improperly in cancelling Mpower's ARES and AGS licenses and hence those licenses should be reinstated." Mpower further sought an injunction preventing CE, NICOR, and PGL from canceling Mpower's customers' enrollment with Mpower as the supplier of their gas and electricity.

¶ 8    Mpower also sought a temporary restraining order (TRO) preventing the ICC from canceling Mpower's licenses and prohibiting NICOR, PGL, and CE from changing their customers' electricity and gas suppliers. The trial court granted the TRO.

¶ 9    On December 18, 2024, Mpower filed a motion to amend its complaint. Mpower's attached proposed amended complaint restated its request for a declaratory judgment and injunctive relief. Count II alleged that the cancelation of its licenses violated the due process clause of the Illinois Constitution (see Ill. Const. 1970, art. I, § 2) because the cancelation was "wholly arbitrary, irrational, unreasonable and capricious." Count III asserted a claim under section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2024)). Mpower alleged, "The procedure by which the ICC cancelled Mpower's ARES and AGS licenses without notice and/or a hearing violated the due process clause of the Fifth Amendment to the Constitution." See U.S. Const., amend. V. Mpower further alleged that it was injured "[a]s a result of the cancellation of Mpower's ARES and AGS licenses and concomitant violation of Mpower's due process rights by the ICC." Finally, Count IV alleged that the "procedure by which the ICC cancelled" Mpower's license violated the due process clause of the Illinois Constitution because Mpower

did not receive notice and an opportunity to be heard before the cancelation. Like the initial complaint, Mpower's proposed amended complaint sought a judgment stating that the ICC "was without authority and/or acted improperly in cancelling Mpower's" certificates. Mpower asked the trial court to order that Mpower's certificates be reinstated and that CE, NICOR, and PGL be prohibited from unenrolling Mpower's customers.

¶ 10 On December 31, 2024, the trial court entered an order setting a briefing schedule. The court ordered defendants to file any response to Mpower's motion to amend by January 17, 2025. The court further ordered Mpower to file any reply to defendants' responses by January 31, 2025. Finally, the court set the motion for hearing on February 4, 2025, at 1:30 p.m.

¶ 11 On January 13, 2025, CE filed a motion to dismiss the complaint. Citing *Ameren Transmission Co. of Illinois v. Hutchings*, 2018 IL 122973, CE argued that the trial court lacked subject matter jurisdiction to review the constitutionality of ICC decisions or ICC proceedings. The ICC also filed a motion to dismiss, raising the same argument. The ICC further claimed that Mpower's complaint was barred by sovereign immunity. On January 28, 2025, after "being presented with the agreement of the Plaintiff, ICC, and [CE]," the court ordered Mpower to file responses to the motions to dismiss by January 29, 2025. The court also set the motions for a hearing on February 4, 2025, at 1:30 p.m.

¶ 12 On January 31, 2025, Mpower filed a reply to the ICC's response to its motion to amend its complaint. Mpower argued that sovereign immunity did not bar its suit because Mpower was seeking to prevent future unconstitutional action "rather than redress a past wrong with monetary damages." See *Walker v. Chasteen*, 2025 IL 130288, ¶ 23 ("[A] complaint seeking to prospectively enjoin unlawful conduct may be brought in the circuit court without offending sovereign immunity principles.").

¶ 13    On February 4, 2025, at 9:53 a.m., Mpower filed a "Supplement to the Motion by Mpower to Amend the Complaint for Injunctive Relief and Declaratory Relief." Mpower asked for leave to file a "revised proposed Amended Complaint." Count I of this supplemental amended complaint asserted that section 4-204 of the Public Utilities Act (220 ILCS 5/4-204) (West 2024)) violated article I, § 2 of the Illinois Constitution (Ill. Const. 1970, art. I, § 2), and count II alleged that statute violated the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV). Count III alleged section 4-204 failed to comply with section 10-65 of the Illinois Administrative Procedure Act) (5 ILCS 100/10-65 (West 2024)). In its prayers for relief, the supplemental amended complaint asked for a declaratory judgment stating that section 4-204 of the Public Utilities Act was unconstitutional on its face and violated the Administrative Procedure Act. It further asked for an injunction preventing the ICC from enforcing section 4-204 and an injunction against CE, NICOR, and PGL preventing them from canceling Mpower's customer enrollment.

¶ 14    At a hearing later that day, Mpower argued that the trial court had jurisdiction over its complaint because it was not challenging any specific ICC decision, order, hearing, rule, or procedure. Instead, it was "challenging the constitutionality of the statutory structure." Counsel for CE argued that the court should not consider the supplemental motion to amend because Mpower did not file it until the morning of the hearing and the proposed supplemental motion to amend included entirely new claims challenging the constitutionality of section 4-204. The trial court found that the Public Utilities Act provided for direct appeal of ICC actions to the appellate court rather than the trial court and that Mpower failed to exhaust its administrative remedies before filing suit. The court found that it lacked subject matter jurisdiction, and it dismissed Mpower's complaint with prejudice. The court added, "The supplement that was filed

today by Mpower will not be considered as it was not timely, but I do agree that it contained other potential causes of actions."

¶ 15    This appeal followed.

¶ 16    Before oral argument in this case, NICOR and PGL filed a motion to dismiss the appeal as moot as to those two defendants. NICOR and PGL asserted that Mpower's only requested relief against NICOR and PGL was an order prohibiting those companies from canceling Mpower's customers' enrollment with Mpower as their gas supplier. After the trial court dismissed the case, however, NICOR and PGL canceled those enrollments. NICOR and PGL claimed that no relief could undo this action, the court could not grant Mpower any relief, and the case was moot. In their response, Mpower stated,

> "NICOR and [PGL], as well as [CE], canceled Mpower's customers which then resulted in a substantial immediate loss due to the canceled contract [citation], as well as future loss of customers because of the cancelation [citation]. It is true that the damage that has been done by [the ICC], [CE], [PGL], and NICOR cannot be undone. However, there now stands a cause of action for damages that should go forward in the Circuit Court of Sangamon County."

Mpower also suggested that dismissing the appeal as moot could have implications for *res judicata* and collateral estoppel if Mpower chose to pursue other claims in the future. We took the motion with the case.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, Mpower argues the trial court erred in refusing to consider its supplemental motion to amend. It further argues that the court erred in finding that it lacked subject matter jurisdiction and in dismissing this case with prejudice.

¶ 19       We first address Mpower's supplemental motion to amend. In its brief, Mpower contends that it offered its supplemental amended complaint to clarify its claims and correct ambiguities in its prior filings, and the trial court erred in refusing to consider it.

¶ 20       This is clearly untrue. Mpower's initial complaint and its proposed amended complaint challenged the revocation of its licenses by the ICC. Mpower did not challenge the constitutionality of any statute in either its initial complaint or proposed amended complaint. Instead, Mpower first raised these claims in its supplemental amended complaint. By including claims challenging the constitutionality of section 2-204 on its face for the first time in its supplement, Mpower plainly attempted to raise new claims.

¶ 21       The trial court rightly refused to consider this supplement. "The court has the right and duty to control its own docket," and it "is vested with wide discretion in granting or denying extensions of time to file pleadings or motions." *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 354 (2000). Moreover, a trial court's inherent authority to control its docket "includes the discretion to strike tardy pleadings." *Landreth v. Raymond P. Fabricius, P.C.*, 2018 IL App (3d) 150760, ¶ 54. In its order setting a briefing schedule, the trial court ordered Mpower to file any reply to defendants' responses to its motion to amend by January 31, 2025. Instead of complying with this order, Mpower filed its supplemental motion to amend the morning of February 4, 2025, hours before the hearing on the motion to amend. Mpower did not provide defendants adequate notice and opportunity to respond to this pleading asserting entirely new claims, and the trial court acted within its discretion when it refused to consider this untimely pleading. Accordingly, we also disregard the claims in Mpower's supplemental motion to amend.

¶ 22       We next address NICOR and PGL's claim that the case is moot as to them. "As a

general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). "An appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief." *Commonwealth Edison Co. v. Illinois Commerce Commission*, 2016 IL 118129, ¶ 10. "It is well established that a case may become moot when, pending the decision on appeal, events occur which render it impossible for the reviewing court to grant effectual relief." *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 46. We review questions of mootness *de novo*. *Alfred H.H.*, 233 Ill. 2d at 350.

¶ 23    As NICOR and PGL contend, Mpower's only claim for relief against them is an order prohibiting those defendants from canceling their customers' services. In its response to the motion to dismiss the appeal and reply brief, Mpower concedes that NICOR and PGL already canceled these services and that this cancelation is irreparable. In its reply brief, Mpower states that "the outcomes that were anticipated when the original Complaint was filed on December 6, 2024—*i.e.*, that irreparable harm would occur to Mpower if [CE, PGL, and NICOR] were allowed to cancel its customers—which did in fact occur." Mpower adds, "Accordingly, the cause of action against [CE, PGL, and NICOR] is now damages rather than injunctive or declaratory relief."

¶ 24    Mpower did not assert a claim for damages in its complaint, its amended complaint, or even its supplemental complaint. Mpower essentially concedes that the case is moot as to NICOR as PGL.

¶ 25    We agree. NICOR and PGL already canceled Mpower's customer enrollment. A court order cannot undo this action. Mpower requested no other relief. Therefore, we cannot

grant effective relief, and the case is moot.

¶ 26    According to Mpower, we should not dismiss the appeal as moot because dismissal could prevent future actions against these defendants pursuant to the doctrines of *res judicata* or collateral estoppel. Under the doctrine of *res judicata*, "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001).

"The doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. The adjudication of the fact or question in the first cause will, if properly presented, be conclusive of the same question in the later suit, but the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which *might* have been litigated and determined." (Emphasis in original.) *Id.* at 389-90.

Mpower contends that *res judicata* and collateral estoppel could prevent other potential lawsuits against these defendants, and we should allow Mpower to pursue this case further.

¶ 27    We disagree. First, Mpower has cited no cases finding that collateral estoppel or *res judicata* provide exceptions to mootness. We will not disregard mootness simply to improve Mpower's chances of filing successful complaints in the future. Moreover, perhaps Mpower

might have avoided the disenrollment of its customers and a mootness finding if it had sought a stay of the trial court's ruling pending appeal. The court granted a TRO preventing the disenrollment of Mpower's customers, and a stay could have maintained the *status quo ante* during the appeal process. But Mpower failed to seek a stay. It is unfortunate for Mpower if this failure rendered this case moot and may frustrate Mpower's future litigation efforts, but this does not establish any exception to the rules of mootness.

¶ 28    Furthermore, the trial court dismissed this case for lack of subject matter jurisdiction. "[T]he dismissal of a complaint for lack of subject matter jurisdiction is not considered a decision on the merits of the complaint." *Id.* at 390. Mpower does not explain why dismissal of the appeal as moot would create *res judicata* or collateral estoppel problems in future cases where the trial court here dismissed the case for lack of subject matter jurisdiction.

¶ 29    Moving to CE, neither CE's nor Mpower's briefs discuss whether the appeal is moot as to CE. However, we see no basis to distinguish CE from NICOR and PGL. As with NICOR and PGL, Mpower's requested relief against CE was only that CE be barred from canceling its customers' enrollment. As with NICOR and PGL, no order from this court could undo CE's cancelations. And as with NICOR and PGL, Mpower asserted no cause of action for damages against CE in any of its complaints. Therefore, we find the appeal moot as to CE.

¶ 30    Finally, we move to the ICC. In its brief, the ICC argues that the appeal is moot as to them regarding any prospective relief. Against the ICC, Mpower requested a judgment declaring that the ICC acted unlawfully in canceling Mpower's certificates and reinstatement of those certificates. Mpower has filed applications for new ARES and AGS certificates, and the ICC approved those applications. See *Mpower Energy NJ LLC*, No. 24-0989, 2025 WL 1027571, *4 (I.C.C. Mar. 27, 2025); *Mpower Energy NJ LLC*, No. 24-0897, 2025 WL 1766450 (I.C.C.

June 18, 2025), *4-5; see also *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003) ("A reviewing court can take judicial notice of events which, while not appearing in the record, disclose that an actual controversy no longer exists, rendering the issue before the court moot."). The ICC contends that there is no additional relief this court could grant.

¶ 31         Mpower does not respond to the ICC's claim. "This court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research." (Internal quotation marks omitted.) *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010). Therefore, Mpower has forfeited any argument this case is not moot. More importantly, we agree with the ICC that Mpower's claim that its certificates should be reinstated is moot when the ICC has already granted Mpower new certificates.

¶ 32         We acknowledge that exceptions to mootness exist. See *Commonwealth Edison*, 2016 IL 118129, ¶¶ 12-18 (discussing the public interest exception to the mootness doctrine); see also *Alfred H.H.*, 233 Ill. 2d at 358-363 (discussing the capable of repetition yet avoiding review exception and collateral consequences exception). However, Mpower does not argue that any of these exceptions apply. Indeed, Mpower does not mention any of these exceptions. Accordingly, Mpower has forfeited reliance on any mootness exceptions. See *Velocity Investments*, 397 Ill. App. 3d at 297; see also Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (requiring an appellant's opening brief to "contain the contentions of the appellant and the reasons therefor").

¶ 33         We agree with the ICC's claim that Mpower's request for prospective relief is moot. The ICC does not discuss whether any claim for backward-looking relief is also moot. We note that before the trial court, in response to the ICC's sovereign immunity claim, Mpower insisted that it was seeking only prospective relief. In its briefs on appeal, Mpower does not

respond to the ICC's sovereign immunity or mootness arguments. If, as Mpower claimed before the trial court, it sought only prospective relief, then all its claims are moot.

¶ 34    We observe that Mpower's complaint and proposed amended complaint sought a declaratory judgment finding that the ICC acted unlawfully in terminating its certificates. Because Mpower sought this declaratory judgment in conjunction with its request for reinstatement of its licenses, we agree with Mpower's claim before the trial court that this was a claim for prospective relief. Therefore, it is moot.

¶ 35    However, even if we consider the claim for a declaratory judgment to be seeking retroactive relief, it is still moot. Other than restoration of Mpower's certificates, we see no way Mpower can benefit from a declaratory judgment finding the ICC's procedures unlawful. As stated above, Mpower already has new certificates. "When it becomes apparent that an opinion cannot affect the results as to the parties or the controversy before it, the court should not resolve the question merely for the sake of setting a precedent or to govern potential future cases." *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1027 (1994). In *Jones v. Pritzker*, 2024 IL App (4th) 230118-U, ¶ 2, the plaintiffs sought a declaratory judgment finding section 7 of the Illinois Emergency Management Agency Act (Act) (20 ILCS 3305/7 (West 2020)) and executive orders issued under that section unconstitutional. However, the relevant executive orders expired before the trial court heard the case. *Jones*, 2024 IL App (4th) 230118-U, ¶ 10. We found the plaintiffs' claim for a declaratory judgment to be moot because the plaintiffs were no longer at risk of sustaining injury once the executive orders expired. *Id.* ¶ 31. We explained, "At that point, a determination of the constitutionality of the Act, absent an actual controversy, would amount to an advisory opinion." *Id.*

¶ 36    Although *Jones* is an unpublished order, we find its reasoning persuasive and

applicable here. Regardless of whether we characterize Mpower's claim as a claim for prospective or retrospective relief, it is seeking a declaratory judgment that can have no practical effect on any of Mpower's rights or interests. Like the expiration of the executive orders in *Jones*, Mpower's receipt of new ARES and AGS certificates eliminated any actual controversy, rendering Mpower's claim moot.

¶ 37                                    III. CONCLUSION

¶ 38          For the reasons stated, we dismiss the appeal as moot.

¶ 39          Appeal dismissed.