2023 IL App (1st) 221636-U

SIXTH DIVISION
November 17, 2023

No. 1-22-1636

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| ALICIA GRAY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2020 L 006917 |
| | ) | |
| CARLTON MIDWAY CORPORATION, | ) | The Honorable |
| | ) | Kathy M. Flanagan, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The judgment of the circuit court is affirmed. The trial court properly granted summary judgment to Carlton Midway Corporation (Carlton) based on the doctrine of collateral estoppel. Alternatively, the trial court did not abuse its discretion when it found that Gray's expert witness was not qualified to testify and that his opinions lacked foundation.

¶ 2                                   I. BACKGROUND

¶ 3    On February 20, 2015, Alicia Gray was injured after she slipped and fell on snow and ice on a parking lot owned and maintained by Carlton, which was located near the Carlton Inn Midway hotel near Midway Airport in Chicago. Gray brought a negligence claim against Carlton and the

snow removal company it contracted with, Beverly Snow and Ice, Inc. (Beverly). In 2016, Beverly moved for summary judgment, and the court granted its motion. On appeal, we affirmed the trial court's order, concluding that Gray "did not prove the source of ice accumulation on which she fell was caused by Beverly." *Gray v. Lewis Properties, Inc.,* 2019 IL App (1st) 180590-U, ¶ 33. We further held that the undisputed facts established that the condition "was open and obvious." *Id*. ¶ 36. Specifically, we opined that it was "clear that [Gray] recognized both the condition and the risk posed by the ice patch" because she testified that "she was aware of the ice throughout the parking lot" and "recognized the risk," and "even testified to altering her behavior and walking in a certain way to account for the danger presented by the ice." *Id.* We remanded to the trial court so that Gray could proceed with her claims against Carlton, but Gray dismissed the case instead.

¶ 4        On June 29, 2020, Gray refiled her suit against Carlton. On December 30, 2020, Carlton moved for summary judgment, arguing that Gray "had no evidence to show the accumulation she claimed to have slipped on was unnatural and [Carlton] had no duty to [Gray] given that the allegedly hazardous condition was open and obvious." Carlton argued that because this court had already decided that the condition was open and obvious, "the law of case the doctrine" barred relitigation.

¶ 5        Gray argued in response that the law of the case doctrine did not apply, and that genuine issues of material fact existed as to whether (1) the ice patch she slipped on was unnatural; (2) the ice patch was open and obvious; and (3) Carlton's alleged negligence proximately caused her injuries. She disclosed a Supreme Court Rule 213(f) expert witness, William Keefe, and submitted Keefe's interrogatory answers and affidavit along with her response. Keefe averred in his affidavit that Carlton's negligent maintenance of its property created the unnaturally accumulated ice that Gray slipped on, and that its failure to maintain its premises in a reasonably safe condition was the

proximate cause of Gray's slip and fall. He also stated that the ice patch would not have been open and obvious to Gray. In its reply, Carlton argued that Keefe's opinions were "conclusory in nature and not the result of any special expertise by the witness[.]" It stated that Keefe's experience "contains nothing by way of knowledge, skill, experience, training, or education on the issues of significance in this present matter" and argued that "[h]is entire CV [curriculum vitae] contains nothing that could lead a court to conclude that he has some specialized knowledge in the analysis of snow removal, water drainage or duties of a hotel to offer to a jury or this Court that will aid the analysis of the relevant issues." More specifically, Carlton stated that Keefe's affidavit "offers nothing by way of analysis as to why any particular pile of snow was natural or unnatural" and "nothing by way of analysis to show that any particular bit of snow or ice was formed as a result of drainage from a natural or unnatural accumulation," and that the opinions he offered are "conclusory and offer no specificity of how [he] reached them." It argued that "[a]bsent a basis being offered for his opinions, they are no more expert than those opinions which might be offered by a random person walking down the street," and that they should be disregarded.

¶ 6     On October 3, 2022, the trial court granted Carlton's motion for summary judgment. It rejected Carlton's law of the case argument (see *Long v. Elborno*, 397 Ill. App. 3d 982, 990 (2010) ("we hold that the law of the case doctrine is inapplicable in the instant case because the refiling of the complaint was not a continuation of the old action, but the commencement of an entirely new action[]")) but found that summary judgment was warranted because the "open and obvious" issue must be resolved against Gray under the doctrine of collateral estoppel. It reasoned that because this court had already decided this issue in the prior appeal, no liability could be imposed on Carlton in the instant case. The trial court noted that the "specific allegations against Carlton are failure to properly maintain the surface of the lot, failure to properly illuminate the parking lot,

failure to repair the defects in the surface of the parking lot (although it knew or had constructive knowledge of these defects), [and] failure to properly remove snow or ice or salt the parking lot, although it had undertaken a duty to do so for the benefit of its patrons and guest[s]." The court reviewed the additional materials submitted by Gray, but found "absolutely no evidence submitted with regard to improper illumination of the parking lot" and "no evidence of any specific defect in the surface of the parking lot." It also found "nothing in [Keefe's] CV or his affidavit which give him the qualifications to render opinions on issues" involved in this case. Gray timely appealed the court's decision.

¶ 7                                                                II. ANALYSIS

¶ 8       The Trial Court Properly Granted Summary Judgment to Carlton Based on the Doctrine of Collateral Estoppel

¶ 9       We review the trial court's order granting summary judgment *de novo*. *Reed v. Galaxy Holdings, Inc*., 394 Ill. App. 3d 39, 41 (2009). A grant of summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). "Construing the evidence in a light most favorable to the nonmoving party, a trial court may only grant summary judgment if the record shows that the movant's right to relief is clear and free from doubt." *Reed,* 394 Ill. App. 3d at 42. "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc*., 309 Ill. App. 3d 313, 328 (1999). Instead, the plaintiff must present a factual basis which would arguably entitle her to judgment in her favor. *Winnetka Bank v. Mandas,* 202 Ill. App. 3d 373, 387-88 (1990).

¶ 10      The elements of a negligence claim are that the defendant owed a duty to the plaintiff, that

the defendant breached that duty, and that the breach proximately caused the plaintiff's injury. *Hornacek v. 5th Avenue Property Management,* 2011 IL App (1st) 103502, ¶ 27. "In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper." *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991).

¶ 11     While a party that owns or controls property has a general duty to maintain its property in a reasonably safe condition, the property owner is under no obligation to guard against injury from open and obvious risks. *Ward v. K Mart Corporation,* 136 Il. 2d 132, 141-42 (1990). "Open and obvious" risks are those which are "apparent and would be recognized by a reasonable person exercising ordinary perception, intelligence and judgment in visiting an area." *Sandoval v. City of Chicago,* 357 Ill. App. 3d 1023, 1028 (2005).

¶ 12     Here, the trial court determined that summary judgment was warranted based on the doctrine of collateral estoppel. It found "no doubt that the 'open and obvious' issue was determined by this Court within the parameters of the motion for summary judgment of Beverly Snow and Ice, Inc.[,]" and that it was "identical" to the issue being presented in the instant lawsuit. The trial court stated,

"There is no doubt that a court of competent jurisdiction rendered a final judgment on the merits in the prior action.

There is no doubt that [Gray], against whom the doctrine is being asserted in the instant case, was a party to the prior action.

There is no doubt that the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior action.

> Therefore, on the basis of the application of the doctrine of collateral estoppel, the condition is determined to be open and obvious, and cannot impose any liability on [Carlton] in the instant case."

¶ 13    Collateral estoppel is an equitable doctrine that is applied to "promote[] fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions." *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.,* 195 Ill. 2d 71, 77 (2001). As the trial court explained, collateral estoppel applies when (1) the issue decided in the prior adjudication is identical with the one in the current action, (2) there was a final judgment on the merits, and (3) the party against whom estoppel is asserted was a party to, or in privity to, the prior adjudication. *Id*. However, "[e]ven where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Nowak v. St. Rita High School,* 197 Ill. 2d 381, 391 (2001). The court "must balance the harm of giving a previously unsuccessful party a second bite at the apple and the need for judicial economy against the right to a fair adversary proceeding in which both parties have the opportunity to fully present their cases." *Richter v. Village of Oak Brook,* 2011 IL App (2d) 100114, ¶ 25. The doctrine of collateral estoppel may not apply if (1) the party could not have obtained review of the judgment in the first suit; (2) the issue is  a legal one and the two actions involve substantially unrelated claims or a new determination is warranted due to an intervening change in law; (3) different procedures apply in the new suit; (4) the burden of persuasion has changed; (4) issue preclusion might adversely affect the public interest or other parties; (5) the party would not have foreseen the issue arising in the current suit; or (6) the party lacked an adequate opportunity to litigate the issue in the first suit. Restatement (Second) of Judgments § 28 (1982); see *e.g., Pepper Construction Co. v. Palmolive*

*Tower Condominiums*, LLC, 2016 IL App (1st )142754, ¶ 77-79 (finding that collateral estoppel did not apply to bar a subcontractor's claims against a general contractor even though the essential elements were met because the parties "were not true adversaries" in the initial suit, the arbitration award "did not resolve disputes" between the parties and the subcontractor "did not have the capacity to control its claims [in the first action] such that it would be unfair to preclude them in the circuit court"). We review whether the doctrine of collateral estoppel is applicable in a particular case under the *de novo* standard of review. *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 42.

¶ 14    In her brief, Gray seemingly concedes that the threshold elements of collateral estoppel are met but argues that it was unfair to apply the doctrine because she was never allowed to "fully present her case" against Carlton and will be "unable to advance her claims against [Carlton]" if we affirm the trial court's decision. However, Gray's case against Carlton depended on her ability to show that the condition of the parking lot was not open and obvious, which was the very same burden Gray faced in responding to Beverly's motion for summary judgment. Therefore, properly framed by the doctrine of collateral estoppel, the issue is not whether Gray offered evidence that the condition was not open and obvious on remand, but rather whether Gray did so when Beverly moved for summary judgment. Because Gray failed to offer any evidence to show that the condition of the parking lot was not open and obvious when Beverly moved for summary judgment, she is foreclosed from taking the proverbial second bite at the "open and obvious" apple in this case.

¶ 15    The single case Gray cites to support her argument that it would be unfair to apply the doctrine of collateral estoppel against her, *Nowak v. St. Rita High School,* 197 Ill. 2d 381 (2001), is inapposite. There, the court found that defendant's collateral estoppel argument failed because

the issues presented were not "*identical,* as required for application of that doctrine." *Id*. at 394 (emphasis in original). Here, by contrast, Gray does not dispute that the essential elements of collateral estoppel have been satisfied, nor can she. The "open and obvious" issue decided in the prior adjudication is identical with the one in the current action, there was a final judgment on the merits, and Gray was a party to the prior adjudication. Moreover, we see no potential unfairness or any reason why the doctrine should not apply. Gray already received a full and fair opportunity to litigate the open and obvious issue; the law, burden of persuasion and procedures involved remain the same; and the determination will have no adverse impact on the public interest or others. Accordingly, we find that the trial court properly applied the doctrine of collateral estoppel here, and that its grant of summary judgment to Carlton was proper.

¶ 16    The Trial Court Did Not Abuse its Discretion When it Found That Gray's Expert Lacked the Requisite Qualifications to Render Opinions and That his Opinions Lacked Foundation

¶ 17    Even if Gray was not collaterally estopped from disputing that the condition was open and obvious, either because Carlton failed to establish the elements of the doctrine or it would be unfair to apply the doctrine, her claim against Carlton would still fail because the trial court properly concluded that her expert witness was not qualified and that her expert witness's opinions lacked foundation.

¶ 18    We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *Davis v. Kraff,* 405 Ill. App. 3d 20, 28 (2010). We will reverse only if "no reasonable person would agree with the position adopted by the trial court." *Schwartz v. Cortelloni,* 177 Ill. 2d 166, 176 (1997).

¶ 19    Gray argues that the trial court reversibly erred when it found that there was "nothing in [Keefe's] CV or his affidavit which gave him the qualifications to render opinions on issues" in

her lawsuit, and that Keefe's CV "makes clear that he has the education, training, and expertise to render opinions on the property that is at-issue in this litigation."

¶ 20　To challenge this court's prior ruling that the condition Gray complained of was "open and obvious[,]" Gray disclosed Keefe as an expert witness pursuant to Illinois Supreme Court Rule 213(f). Ill. S. Ct. R. 213(f) (West 2022). Keefe's CV reflects that he is a licensed professional engineer, board certified in Forensic Engineering by the National Academy of Forensic Engineers, and that he provides "mechanical engineering design analysis, forensic engineering services and safety analysis to product manufacturers, employers, attorneys and insurance companies." Keefe said he reviewed various materials related to Gray's case, including depositions, photographs of the scene, and climatological data for the month of February 2015 before forming the opinions reflected in his affidavit.　Keefe averred that it was his "professional opinion that that manner in which the snow was cleared *** caused unnaturally accumulated snow piles to melt, trickle down into the parking lot, form unnatural puddles and refreeze into hardened ice[.]" He also asserted that the storm drain was "located in an area of the parking lot where runoff from the aforementioned unnaturally accumulated snow piles would settle and harden into ice after melting[,]" that the drain was located "where there is a great deal of foot traffic[,]" and that Carlton was "negligent in allowing its property to be maintained in the aforementioned manner." He added that "the ice Plaintiff Gray slipped on would not have appeared as an open and obvious danger to her" and that it was "reasonable that she did not see the ice before slipping."

¶ 21　The trial court found that "the affidavit of Mr. Keefe is problematic and does not constitute the amount of evidence which would be needed to create a genuine issue of material fact on the 'unnatural' designation of the snow and ice in the parking lot area." After reviewing Keefe's

qualifications and experience, the court concluded that,

> "[t]here is nothing in this CV or his affidavit which gives him the qualifications to render opinions on issues concerning the allegedly improper piling of snow from plowing activities, [or that] the manner in which the snow was cleared caused unnaturally accumulated snow piles to melt, trickle down into the parking lot, form unnatural puddles and refreeze into harden ice. These areas were located where pedestrians were expected to walk. [Keefe] opines that the storm drain was located in an area where runoff from the unnaturally accumulated snow piles would settle and harden into ice. In the answer to the *** interrogatory, it is stated that Mr. Keefe would be testifying that based upon his review of the record, 'including but not limited to the pitch of the parking area,' and the failed steps taken by [Carlton] to clear ice on the premises that the cause of the plaintiff's fall was the unnatural accumulation of ice. The difficulty is there is no evidence of any measurements taken of the exact pitch of the parking lot, there is no evidence of where the storm drain should have been placed, there is no evidence as to how the snow piles were accumulated incorrectly, there is no showing of any defect in the surface of the parking lot which caused any unnatural accumulation of snow or ice, and there is no evidence to support the failure to properly remove snow and ice or salt the parking lot."

For these reasons, the court found that Keefe's lack of qualifications and failure to offer a basis for his opinions were another basis to grant summary judgment to Carlton.

¶ 22   Expert testimony is admissible if "the proffered expert is qualified as an expert by knowledge, skill, experience, training or education and the testimony will assist the trier of fact in understanding the evidence." *Biundo v. Bolton,* 2020 IL App (1st) 191970, ¶ 26. This testimony is admissible "only if the expert has specialized knowledge that will 'assist the trier of fact' in

understanding the evidence or in determining a fact at issue." *Todd W. Musburger, Ltd. v. Meier,* 394 Ill. App. 3d 781, 800 (2009). Testimony as to legal conclusions that will determine the outcome of the case is inadmissible. *Id.*

¶ 23  Here, the trial court properly exercised its discretion when it determined that Keefe was not qualified to render opinions on the issues in this case and that he failed to explain the bases of his opinions. Nothing in Keefe's background or experience indicates that he had experience or expertise in the subject areas of storm drain placement, drainage issues, or snow and ice accumulation. And his affidavit contained only conclusory opinions that were unsupported by any specific facts. As Carlton pointed out, Keefe offered "no analysis" to explain why he believed certain snow piles were unnatural, and no evidence to show that any of the snow or ice in the parking lot was formed as a result of drainage issues. Keefe also failed to explain how the "manner in which the snow was cleared" "caused unnaturally accumulated snow piles to melt, trickle down into the parking lot, form unnatural puddles and refreeze into hardened ice." Moreover, Keefe's conclusory statement—that the ice patch would not have been open and obvious to Gray—was similarly unsupported by any facts or analysis. For these reasons, we find that the trial court properly exercised its discretion when it disregarded Keefe's opinions because Keefe lacked the requisite qualifications to render opinions and because Keefe failed to offer any bases for his opinions in this case.

¶ 24                              III. CONCLUSION

¶ 25  For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 26  Affirmed.